## STATE v. CITY OF BEAUMONT.

### No. 3805.

Court of Civil Appeals of Texas. Beaumont.

March 18, 1942.

J. T. Adams, of Orange, and E. G. Aycock, of Fort Worth, for appellant.

E. B. Votaw, City Atty., and S. P. Dunn, Asst. City Atty., both of Beaumont, for appellee.

WALKER, Chief Justice.

This was a suit by appellant, The State of Texas, for itself, Orange County, and certain other political subdivisions and municipal corporations, filed April 22, 1940, against appellee, The City of Beaumont, a municipal corporation in Jefferson County, Texas, to recover of and from appellee the delinquent taxes, principal and interest taxed by appellant against the two following described tracts of land, to have the amount of its demand declared a lien against the land, and with prayer for foreclosure of its tax lien:

Tract One: "250 acres of land, being out of the William Stephenson and Gilbert Stephenson Survey, Abstract Nos. 23 and 167, 67 acres thereof being situated and lying in the Gilbert Stephenson Survey and 183 acres thereof being situated and lying in the William Stephenson Survey, all in Orange County, Texas, and being the same land as described in a deed from the East Beaumont Townsite to the City of Beaumont, dated the 12 day of March, 1937, and recorded in Vol. 59, page 55 Deed Records of Orange County, Texas."

Tract Two: "29.58 acres of land, more or less, in the South West corner of the William Stephenson Survey, Abstract No. 23, Orange County, Texas, sometimes called and known as 'Harbor Island', and being the same land as described in a deed from the East Beaumont Townsite Company to the City of Beaumont, dated the 19th day of April, 1920, and recorded in Vol. 47, page 621, Deed Records of Orange County, Texas."

Appellee answered by plea of privilege to be sued in Jefferson County, the place of its corporate domicile, which on trial to the court was sustained. Appellant has duly perfected its appeal to this court.

The first point presented is whether the property in controversy is subject to taxation. The answer to this question must be determined by the nature of the property and its use by appellee. Our Constitution, Art. 8, Sec. 2, Vernon's Ann.St., provides that "the legislature may, by general laws, exempt from taxation public property used for public purposes." Construing this article of the Constitution in City of Abilene v. State, 113 S.W.2d 631, 635, the Eastland Court of Civil Appeals said: "It is, therefore, our view that when the facts of a given case establish the ownership of property by a municipal corporation, which has been acquired for an authorized public purpose, and the purpose for which it is owned and held has not been abandoned, such property is to be regarded as used for public purposes, and the Legislature has the power to provide by general law for its exemption from taxation."

Construing Art. 7150, R.C.S.1925, " 'All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof' shall be exempt from taxation," the court said in that case: "These considerations lead us to the conclusion that as to the power of the Legislature, to exempt public property from taxation, all such property should be regarded as 'used for public purposes' when

**346**

it is owned and held for public purposes, but not owned or held exclusively for such purposes; and there has been no abandonment of such purposes."

In the case at bar, the parties made the following agreement:

"7.

"It is further agreed that on, to-wit, the 4th day of May, A. D. 1929, an election was duly and regularly held within the corporate limits of the City of Beaumont to determine, among other things, whether or not serial bonds of the City of Beaumont in the sum of Four Hundred Thousand Dollars ($400,000.00) should be issued, the proceeds of which to be used for the purpose of improving, extending, repairing and equipping the present wharves and docks of the City of Beaumont, and acquiring additional sites therefor, said official ballot presented to the qualified voters of the City of Beaumont in that respect reading as follows, to-wit:

"'For the issuance of serial bonds of the City of Beaumont in the sum of $400,-000.00 for the purpose of improving, extending, repairing and equipping the present wharves and docks of the City of Beaumont and acquiring additional sites therefor.

"'Against the issuance of serial bonds of the City of Beaumont in the sum of $400,-000.00 for the purpose of improving, extending, repairing and equipping the present wharves and docks of the City of Beaumont and acquiring additional sites therefor.'

"8.

"That the election referred to in foregoing paragraph No. 7 resulted in favor of the issuance of said serial bonds in the sum of the said Four Hundred Thousand Dollars ($400,000) and that thereafter the said bonds were issued and sold and the proceeds thereof placed in a special account in the City depository of the City of Beaumont, to-wit, the First National Bank of said City, as required by law; that all of the legal steps necessary in connection with said election and said bond issue were complied with by the City of Beaumont, and that said bond issue in all respects complied with the laws of the State of Texas.

"9.

"It is further agreed that thereafter the First Tract of land described in plaintiff's petition was purchased in fee simple from the East Beaumont Townsite Company, a corporation, in consideration of the sum of One Hundred Eighty-Two Thousand, Five Hundred Dollars ($182,-500.00) and paid for out of the proceeds of the above described Four Hundred Thousand Dollars ($400,000.00) bond issue on deposit as aforesaid, by voucher No. 1 dated April 20, 1937, drawn on the First National Bank of Beaumont, Texas, signed by Raymond Edmonds, City Clerk of said City, in the sum of One Hundred Eighty-Two Thousand, Five Hundred Dollars ($182,500.00), payable to East Beaumont Townsite Company and to be drawn from said above described funds.

"10.

"It is further agreed that the Second Tract of land described in plaintiff's petition was also purchased from the East Beaumont Townsite Company for and in consideration of the sum of Twenty-Five Thousand Dollars ($25,000.00) by deed dated the 19th day of April, A. D. 1920, said deed reciting a cash payment of Twenty-Five Hundred Dollars ($2500.00) and the execution of nine (9) vendor's lien notes on said property of Twenty-five Hundred Dollars ($2500.00) each, maturing each year after said purchase until said land was paid for; that said Second Tract of land was not purchased from the proceeds of a bond issue; that the initial payment of Twenty-Five Hundred Dollars ($2500.00) was made from surplus earned by the Beaumont Harbor and Wharf Front on hand when said Second Tract of land was purchased, and that thereafter the Twenty-Five Hundred Dollar ($2500.00) vendor's lien notes were paid annually by sums appropriated each year by taxation shown on the Annual Ordinance levying taxes 'for the purpose of paying for and taking up Wharf and Dock bills payable.'"

With reference to the use that has been made by appellee of tract No. 1, Mr. Raymond Edmonds testified that he had been with the City of Beaumont since 1923; from 1923 to January, 1925, he was clerk in the city clerk's office; from January, 1925, to April, 1940, he was city clerk and secretary to the Port Commission; since April, 1940, he has been city manager. He testified further (Q. & A. reduced to narrative):

"I am familiar with the two tracts of land involved in this controversy; I am familiar with the manner in which that

land was acquired by the City of Beaumont. Tract No. 1 was acquired from proceeds of a bond issue, bonds voted for the purpose of acquiring additional sites for wharves and docks and improving and equipping that property. It was acquired in 1937, in the spring. The City of Beaumont has made no use of this 250 acres of land since it was purchased by it; no use whatever; the reason, there has not been any particular demand right now for the development of additional dock facilities."

"Q. I will ask you this question, Mr. Edmonds; since this Harbor Island or Goat Island—you are familiar with that? A. Yes.

"Q. Since that island has been acquired by the City of Beaumont, tell what use, if any, has been made of it by the City? A. Well, it has been used for mooring rafts of timber which are floated down the River and which are loaded over the sides of vessels in the stream; those timber rafts are accumulated, awaiting the arrival of the vessel; it has been used to some extent for mooring ships, small ships and large ships. It has been used continuously to anchor dead men and a line to turn vessels around in the stream; and the City has derived revenue, that is the Board fund or Board Commission, whatever you call it, has derived a revenue from that service, running lines across the River and tying them to these dead men and assisted in mooring or unmooring vessels and even turning them around.

"Q. These funds derived from those sources has gone into what fund? A. The Harbor Revenue fund.

"Q. They have all gone into that fund? A. Yes, sir.

"Q. None of them have gone into the general fund? A. No.

"Q. You are familiar with the Charter provision that those funds can't be used for any purpose other than harbor purposes? A. I am.

"Q. And those particular funds have not been used for other purposes? A. They have been used for harbor purposes only.

"Q. Now, I will ask you this, Mr. Edmonds; has the City of Beaumont ever made a request to the Federal Government for a permit to join Harbor Island with our present dock? Have they ever made application to the Federal Government for a permit to block that channel by joining it to the mainland? A. Yes.

"Q. Mr. Edmonds, you know of your own knowledge that the City of Beaumont made application to the Federal Government to block the channel and join it to the mainland? A. Yes, sir.

"Q. Did the City get that permission from the Federal Government? A. Yes.

"Q. I will ask you to examine this instrument and see if this is the permit? A. Yes.

"Q. And those blue prints show the draft that accompanied it? A. Yes.

"Q. Mr. Edmonds, I will ask you approximately when this project of joining Harbor Island to our present wharf and dock system was under consideration? A. Well, that plan, as set out there, was under consideration in 1938. * * *

"A. It was under consideration in 1938.

"Q. In 1938? A. Yes, sir.

"Q. And what did the City propose to do at that time? A. The City proposed, after they received approval of the War Department, to block that channel off, to fill the old channel of the River with a sand fill, connecting it with the mainland of the present City, then construct wharves and docks on the slip, as it were.

"Q. Did the City, through its proper officials, have an artist draw a photograph of the proposed improvements? A. The City's consulting engineer devised that plan and had those photographs taken and had that plan drawn of Harbor Island as set out on that photograph.

"Q. Does this picture represent what the City intended to build at that time? A. Yes.

"Q. Mr. Edmonds, I will ask you this: Does the City of Beaumont, at the present time, have an unissued bonds for harbors and wharves improvements with which to perform this work? A. They do; they have approximately nine hundred thousand dollars of bonds authorized in 1929, but as yet unissued.

"Q. They have not been issued as yet? A. Yes.

"Q. But they are already authorized by election? A. Yes.

"Q. They are just bonds that have not been issued? A. Yes.

"Q. And that money will be used for this purpose; that is what they contemplate using it for? A. Yes; the purpose

is limited to dock and wharf improvements.

"Q. And the money may be used for improving the 250 acre tract? A. Yes.

"Q. That sum is around nine hundred thousand dollars, you say? A. Yes. It is approximately; it is 'a little less than nine hundred thousand dollars."

On the testimony, the court was authorized to find that appellee purchased the property described in appellant's petition for an authorized public purpose, and has held the property for that purpose, and that the purpose for which it was purchased has not been abandoned. Therefore, under the construction given Art. 8, Sec. 2 of our Constitution, this property, since its purchase by appellee, has been used for public purposes, and the Legislature, by Art. 7150, R.C.S.1925, supra, has exempted it from taxation. Appellants and appellee have reviewed many authorities on the proposition presented by this appeal, which we do not discuss because in our judgment this case is ruled by City of Abilene v. State, supra; appellant makes the statement that if the pertinent constitutional and statutory provisions were given a correct construction in that case, "the rule there announced is determinative of the controversy at bar. It is believed, however, that the unsoundness of that opinion may be successfully demonstrated to this Court." Appellant also concedes that, if this point is decided against it, the venue was properly changed and the case ordered transferred to the district court of Jefferson County.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.