

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 9, 1958

Mr. E. N. Jones, President
Texas Technological College
Lubbock, Texas

Opinion No. WW-531

Re: Whether certain property
owned by Texas Techno-
logical College in Carson
County is exempt from
taxation under the laws
of the State of Texas.

Dear Mr. Jones:

We quote from your opinion request as follows:

"Your opinion is respectfully requested as to
whether certain property owned by Texas Technological
College in Carson County is exempt from taxation under
the laws of the State of Texas.

"The property was originally the PanTex Ordnance
Plant and was deeded by the Federal Government to
Texas Tech on April 1, 1949 by deed without warranty
for the purpose of educational utilization. The deed
contained a recapture clause in event of a national
emergency.

"During the Korean emergency in 1951 and 1952, the
Government exercised the recapture clause and recaptured
approximately 10,000 acres of the 16,000, with improve-
ments, originally deeded to the College. A period of
negotiations began and culminated in the instruments
dated August 19, 1955 which have been sent to your office.

"For the sake of clarity, the property will be
divided into two classifications, with a description
of each:

"PROPERTY HELD PURSUANT TO THE
EDUCATIONAL USE PLAN

"This property was conveyed to Texas Tech by the
United States Government for a period of twenty years
on April 1, 1949 on the contention (sic) that such
property be used in compliance with an Education Use
Plan which was established by the General Services
Administration, has been revised, and is now under

the jurisdiction of the Department of Health, Education and Welfare.  If the property is not operated strictly in accordance to such plan, the United States Government may re-take it for non-compliance any time within the remaining years of the twenty-year period in keeping with the reversionary clause in the Amended Deed.  At the end of the twenty-year period, Texas Tech will own the property outright.

"The majority of this property is either under cultivation or being used for the grazing of experimental herds owned by Texas Tech.  Texas Tech keeps a full-time crew on the property for the purpose of maintenance and to aid in research.  One particularly outstanding research project presently being conducted is the bull progeny tests.  Faculty and students are brought-up from Texas Tech's main campus to study and observe the work being conducted.

"Four buildings located on the aforesaid property are temporarily excess to the needs of Texas Tech in its operation pursuant to the Education Use Plan. Three of these buildings are being leased to Phillips Chemical Company and the other to one of their employees by Texas Tech for and with the permission of the Department of Health, Education and Welfare.  It is contemplated that as the educational program expands, this property will be used in connection therewith and is being held for the purpose.

## "PROPERTY OWNED OUTRIGHT BY TEXAS TECH

"This property is owned outright by Texas Tech, having been purchased from the United States Government by use of accumulated amortized credits.  The majority of this property is rented to the Phillips Chemical Company for storage purposes.  Phillips rents three warehouses on a five-year basis and it rents one hundred and two (102) igloos on an 'as-needed basis,' paying only for the igloos actually used.  Certain staff residences located on this property are rented to individuals on a month-to-month tenancy.  Certain buildings, located on said property and known as PanTex Village, are owned by Carson County.  Texas Tech leases the land under such buildings to the county on a year-to-year basis for $1.00.

"The income from all of the aforesaid rentals is credited to the PanTech Farms Account and is used solely for the promotion of the educational program at PanTech

Farms in Carson County.  It is contemplated that this
property will be eventually needed as part of the PanTech
Farms operation pursuant to the Education Use Program
and is being held for such future use."

It is the opinion of the Attorney General that all of the
above-described property is exempt from taxation under the
laws of the State of Texas.

## PERTINENT STATUTORY AND CONSTITUTIONAL PROVISIONS

Article 8, Section 2 of the Texas Constitution contains
the following language:

">. . . the legislature may, by general laws, exempt
from taxation public property used for public purposes;
. . . /and/ all buildings used exclusively and owned
by persons or associations of persons for school pur-
poses. . . ."

The provisions of the aforesaid Article are permissive
and not mandatory.  Pursuant thereto, the legislature enacted
Article 7150, Texas Revised Civil Statutes, the salient pro-
visions of which read as follows:

"The following property shall be exempt from taxation,
to-wit:

"1.   Schools and Churches. -- Public school houses. . . .
All public colleges, public academies, and all endow-
ment funds of institutions of learning and religion
not used with a view to profit, and when the same are
invested in bonds or mortgages, and all such buildings
used exclusively and owned by persons or associations
of persons for school purposes; . . ."

". . .

"4.   All property, whether real or personal, belonging
exclusively to this State, or any political subdivision
thereof. . ."

## GENERAL DISCUSSION

The exemption of property used for school purposes applies
to private schools as well as public schools.  Cassiano v.
Ursuline Academy 64 Tex. 673 (1824).  However, the exemption
accorded private schools is more restrictive than the exemp-
tion given to public school houses, public colleges and public

academies.   Chief Justice Stayton pointed out this distinction
in the case of St. Edward's College v. Morris, Tax Collector,
17 S.W. 512 (Tex.Sup.Ct. 1851):

> "In reference to the exemption from taxation of
> property, when used exclusively and owned by persons
> or associations of persons for school purposes, the
> statute simply repeats the language of the Constitution
> which permits the exemption to be made; thus indicating
> an intention to make the exemption in such cases more
> restrictive than is the exemption when given to public
> school-houses, public colleges and public academies.
> The Constitution, as well as the statutes, make the
> distinction between public property and private property
> owned and used for school purposes. . ."

Texas Technological College was created and is governed
by the laws of the State of Texas.  It is a public college.
Its property is public property of the State of Texas, and
is held by Texas Technological College as an agency of the
State of Texas.   See State v. University of Houston 264 S.W.
2d 153 (Tex.Civ.App. 1954, N.R.E.)

The test for determining whether public property is tax
exempt because used for a "public purpose" is whether it is
used primarily for the health, comfort and welfare of the
public.   A. & M. Consolidated Independent School District v.
City of Bryan, 184 S.W. 2d 914 (Tex.Sup.Ct. 1945).   Public
education is recognized as a function of State government.
Cassiano v. Ursuline Academy, supra.   There can be no doubt
that the maintenance of a public school is a public purpose
as envisioned by Article 8, Section 2, Texas Constitution.
Therefore, this opinion is concerned with the exemption ac-
corded to "public property used for public purposes" by
Sections 1 and 4 of Article 7150, Texas Revised Civil Statutes.

From St. Edward's College v. Morris, supra, we quote:

> "Public schools, colleges, and academies may, under
> authority of law, be established for the purpose of
> giving instruction in . . . agriculture, or other
> pursuit, which can be done practically only by having
> lands which may be used for the purpose of giving
> practical instruction, and in such a case all the
> buildings and land used for such a purpose would evi-
> dently be exempt."

On the authority of this case it is apparent that all the
property described as "Property Held Pursuant to the Educa-
tional Use Plan," (with the exception of the four buildings

which are temporarily excess to the needs of said plan and which are being rented) is exempt from taxation.

The exemption accorded to "public property used for public purposes" is not lost even though such property may be temporarily leased or rented, so long as the public purpose of the property has not been abandoned, and so long as the revenue from such renting or leasing enures to the public benefit.  State v. City of Beaumont 161 S.W. 2d 344 (Tex.Civ.App. 1942, no writ history); City of Abilene v. State 113 S.W. 2d 631 (Tex.Civ.App. 1938 Error Dismissed.)

In your letter you state that it is contemplated that the property described as "Property Owned Outright by Texas Tech," and the four buildings listed under "Property Held Pursuant to the Educational Use Plan" which are temporarily excess to the needs of such plan, will eventually be used in connection with the educational use plan and are being held for that purpose. You further state that the income from all rentals is credited to the PanTech Farms Account and is used solely for the promotion of the educational program.  It is therefore apparent that the property described as "Property Owned Outright by Texas Tech" and the four rented buildings listed under "Property Held Pursuant to the Educational Use Plan" are also exempt from taxation.

## SUMMARY

The property held by Texas Technological College pursuant to the Educational Use Program is exempt from taxation under the laws of the State of Texas on the grounds that such property is the property of a public college used in connection with the college's educational program. The remainder of the property is also exempt from taxation under the laws of the State of Texas though temporarily leased or rented by reason of its being public property "held" for public purposes, since the public purpose of such property has not been abandoned and all revenues therefrom enure to the benefit of Texas Tech and are used solely for the promotion of the educational program at PanTech Farms.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _____
Jack N. Price
Assistant Attorney General

JNP:db

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

C. Dean Davis
B. H. Timmins, Jr.
L. P. Lollar
Henry G. Braswell

REVIEWED FOR THE ATTORNEY GENERAL

By:  W. V. Geppert