**The CITY OF BEAUMONT, Petitioner,**

v.

**Jennie FERTITTA et al. (the Jensam Corporation), Respondents.**

**No. A-11007.**

Supreme Court of Texas.

April 26, 1967.

Rehearing Denied May 24, 1967.

George E. Murphy, City Atty., King, Sharfstein & Rienstra, Dale Dowell, Beaumont, for petitioner.

W. G. Walley, Jr., Beaumont, for respondents.

ON MOTION FOR REHEARING

HAMILTON, Justice.

Petitioner's motion for rehearing is granted. Our original judgment rendered on June 8, 1966, is set aside. The following opinion is substituted for that filed on said date:

This is a suit brought by the petitioner, the City of Beaumont, as lessor, against the respondent Jensam Corporation, successor in interest to Sam Fertitta, lessee, to cancel and have declared void two certain amendments to a lease contract, and for

rent and other sums due under the original lease and for taxes. Said amendments are hereinafter referred to as the 1933 amendment and the 1935 amendment.

Both parties moved for summary judgment. The trial court severed out the question of damages and tried only the question of the validity of the two said amendments to the lease contract. It denied petitioner's motion for summary judgment and granted that of the respondent, declaring the amendments to be valid. The Court of Civil Appeals affirmed the action of the trial court. 392 S.W.2d 479.

We affirm in part both judgments and reverse in part both judgments, and we reverse and render in part, resulting in a holding that the 1933 amendment is invalid and the 1935 amendment is valid.

On November 14, 1928, the petitioner and Sam Fertitta entered into the original lease of a term of 99 years, beginning December 1, 1928, and terminating on November 30, 2027. The annual rental provided for is six per cent of an appraised value of $130,000.00, agreed to by both parties, for the first ten years. At the end of each decennial period the property is to be reappraised by the parties or by arbiters and the annual rental is to be 6% of such reappraisal.

Additional consideration is provided in paragraph 9 of the contract as follows:

"(9) It is the contention of Lessee that the property and premises herein leased are not subject to taxation, but it is agreed, however, that Lessee shall pay to Lessor, in addition to the rent herein provided to be paid, as taxes or as a special assessment against the property herein leased annually as and when taxes assessed by Lessor accrue and become payable, beginning with the year 1929, an amount equal to all taxes that would be assessable by Lessor against said property *if same were taxable*. Lessee further agrees that if said property is subject to taxation by the State and County,

he will pay as they accrue all taxes assessable against said property by said State and County." (Emphasis ours.)

On October 3, 1933, petitioner adopted a resolution through its City Commission which authorized an amendment reducing the rent due on the property to $5,000.00 per year until December 1, 1938, at which time the terms of the original lease were to take effect. The reason given in the resolution for such action was because of the national economic depression which gripped the United States at this time. This amendment of 1933 stated that the $5,000.00 annual rental was to be in lieu and in substitution of any and all other considerations provided in the 1928 lease until 1938.

On January 2, 1935, the City of Beaumont and Fertitta amended the 1928 lease as well as the 1933 agreement. This 1935 agreement provided that from 1935 to 1938, $5,100 per year would be paid in lieu of all considerations provided in the original lease for those years, and from 1938 to 1968 the lessee would pay the lessor $6,000 annually, of which amount $4,000 was for rent and the remaining $2,000 was a special assessment in lieu of the taxes and special assessments mentioned in the 1928 lease. The 1935 amendment contains this provision:

"WHEREAS, both Lessor and Lessee recognizing the continued unsettled and depressed economic condition, have agreed that said lease contract as originally written should be modified, so that the total consideration to be paid the City of Beaumont by Lessee should be made certain and definite for the period of time hereinafter mentioned, and Lessor and Lessee have agreed in consideration of the premises, and in consideration that Lessee should pay Lessor FIFTY-ONE HUNDRED DOLLARS ($5100.00) per annum from January 1st, 1935, to December 1st, 1938, payable in equal monthly instalments, and SIX THOUSAND DOLLARS ($6,000.00)

per annum thereafter, until December 1st, 1968, payable in equal monthly instalments, and thereafter according to the terms of the original lease. That said contract of lease should be so modified accordingly."

Petitioner takes the position that the amendments of 1933 and 1935 reduced the rent as provided for in the 1928 lease and this violates Article III, Section 55 of the Constitution of Texas. Under its third and fourth points of error petitioner argues that the 1935 amendment to the 1928 lease contract exempted the leasehold estate from paying or bearing its proper and lawful share of taxes.

We first address ourselves to the question of whether or not the 1933 and 1935 amendments to the 1928 contract are in violation of Article III, Section 55, of the Texas Constitution. The Court of Civil Appeals held that the amendments of 1933 and 1935 were novations of the 1928 lease contract and provided substituted agreements containing new and valuable consideration, and are valid. We agree with the Court of Civil Appeals that the 1935 amendment is supported by consideration and is valid. However, we disagree with that court as to the 1933 amendment.

Article III, Section 55, of the Texas Constitution provides:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years."

Concerning this provision of the Constitution, we said in State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737, at page 742 (1960):

"After the occurrence of events which under the law then existing give rise to an obligation on the part of an individual or corporation to the state, the Legislature has no power to release or diminish that obligation *without consideration."* (Emphasis ours.)

The 1933 amendment lowering the amount of rentals to be paid is without consideration and is invalid. It simply substituted a payment of $5,000 annually from 1933 to 1938 for the consideration provided in the 1928 lease for the ten-year period from 1928 to 1938. A definite value of $130,000 for the property had been fixed in the 1928 lease. Six per cent of that value, or $7,800, was the fixed annual rental for that ten-year period. A substitution of $5,-000 annually for the definite consideration of $7,800 in addition to other considerations provided in the contract would amount to a release in part of the definite rental agreed to be paid for the years 1933 to 1938. For this partial release there is no consideration provided. Therefore the 1933 amendment is invalid by reason of the above constitutional provision.

The 1935 amendment is not invalid, however. The conditions involved must be considered as of the time the contract was made and not as of some subsequent date. Great Southern Life Ins. Co. v. Heavin, 39 S.W.2d 851 (Tex.Comm.App.1931, holding approved); Johnson v. Breckenridge-Stephens Title Co., 257 S.W. 223, (Tex.Comm. App.1924, judgmt. adopted).

In 1935, the provisions of the 1928 lease required that respondents pay $7,800 per annum as rent from 1935 to 1938. Thereafter rent was to be determined at the rate of 6 per cent of appraised value. Therefore, from 1938 to 2027 the rent would have varied according to each decennial appraisal, under the original lease. In addition, certain payments were required in lieu of taxes.

The 1935 amendment provided that the amount of rent would be modified for the years 1935 to 1968. The rental from 1935

to 1938 was fixed at $5,100 per annum, including payments in lieu of taxes. The rental from 1938 to 1968 was fixed at $6,000 per annum, including payment of $2,000 in lieu of taxes. Thus, the amendment fixed the amount of rent which would formerly have been determined in accordance with the decennial appraisals in 1938, 1948 and 1958.

Respondents in effect exchanged an obligation to pay $7,800 a year until 1938 and thereafter an uncertain amount for the next thirty years for an obligation to pay $195,300 in annual installments of $5,100 and thereafter $6,000. In the unsettled and depression conditions of this period the appraisal of the property could have resulted in a rental either in excess of, or less than, the stated $6,000. Thus respondents gave up the possibility of obtaining a lower rental for a fixed rental of $6,000 per annum.

By the same token, the City gave up the possibility that the appraisals might result in an increased rent for the years in question. Since the parties to the 1935 amendment assumed obligations which were different in character from those which they were legally bound to observe, the amendment was supported by consideration. See Kirchoff v. Voss, 67 Tex. 320, 3 S.W. 548 (1887); Lockhart State Bank v. Baker, 264 S.W. 566 (Tex.Civ.App.1924, no writ); 1 Williston, Contracts, § 121 (1936); Restatement, Contracts, § 84(c).

The case of Raymond v. Krauskopf, 87 Iowa 602, 54 N.W. 432 (1893) presents a similar situation. Under a one-year lease of 40 acres of farm land, the lessee agreed to pay lessor 16 bushels of corn per acre as rent. Storms severely damaged the land and crop. The lessee threatened to abandon the farm. A new oral agreement was entered into, whereby the lessee promised to deliver one-half of all the corn which should be raised during the year as rent. The court held that the second agreement was supported by consideration:

"But there is more involved than a mere agreement to satisfy a debt upon recovering a part of its amount. For the obligation to deliver as rent a fixed number of bushels of corn there was substituted an agreement to deliver a specified share of the corn which should be raised, but it was not then known whether that share would be more or less than the number of bushels previously fixed, although it is probable that both parties believed it would be less." (54 N.W. at 433.)

See also Evans v. Lincoln Co., 204 Pa. 448, 54 A. 321 (1903), wherein the court held that where under the terms of a lease of hotel property the lessee is at liberty to conduct any class of hotel that best conforms to his own interests, an agreement by the lessors to reduce rent upon condition that the lessee conduct only a first class hotel, that being to their interest, is supported by consideration.

The case of Delta County v. Blackburn, 100 Tex. 51, 93 S.W. 419 (1906) is cited by the City of Beaumont as controlling. As to the 1933 amendment it is controlling and supports our holding that such amendment is invalid. This Court held in that case that the commissioners court could not reduce from seven per cent to three per cent the interest rate that was due upon a vendor's lien note payable to the county because the property had declined in value. The declining value of the property in no way affected the rate of interest fixed in the vendor's lien note. In the case before us the declining value of the property from 1938 to 1968 could affect the amount of rent that would be payable under the lease contract.

We next address ourselves to the question of whether or not the amendment of 1935 is invalid because it amounted to a commutation or exemption of taxes on the leasehold estate held by respondents. The City of Beaumont contends that such leasehold estate is taxable by virtue of

the statutes. Article 7173, Vernon's Ann. Tex.St., provides:

"Property held under a lease for a term of three years or more, or held under a contract for the purchase thereof, belonging to this State, or that is exempt by law from taxation in the hands of the owner thereof, shall be considered for all the purposes of taxation, as the property of the person so holding the same, except as otherwise specially provided by law. * * *"

Article 7174, V.A.T.S., provides:

"* * *

"Taxable leasehold estates shall be valued at such a price as they would bring at a fair voluntary sale for cash. * * *"

The City contends that said Article 7173 is applicable to the leasehold held by the respondents in that the lease is for more than a term of three years, and the lands therein leased are not taxable in the hands of the City, the owner thereof. The respondents make two alternative contentions: First, they contend that Article 7173 does not apply to the leasehold involved here because the lands are taxable to the City. In their second contention they say that if the lands are not taxable in the hands of the City it is by virtue of their being exempt under Article XI, Section 9 of the Constitution; and if the Constitution exempts the lands it necessarily exempts the leasehold as well.

We will first dispose of the latter contention that Article XI, Section 9 of the Constitution exempts the land from taxation. That provision is as follows:

"The property of counties, cities, and towns, owned and held *only for public purposes*, such as public buildings and the sites therefor, fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds *and all other property devoted exclusively to the use and benefit of the public* shall be exempt from forced sale and from taxation, provided, nothing herein shall prevent the enforcement of the vendor's lien, the mechanic's or builder's lien, or other liens now existing." (Emphasis ours.)

Admittedly this property is being used by the lessee for private commercial purposes, and we may assume that the revenues derived from this lease are used by the City for public purposes. Our question is, does the fact that the City may use the revenues from this lease for public purposes, alone, qualify this property for exemption under said constitutional provision? We think not. It appears that the use to which the property itself is put is of primary importance in making the determination. Generally speaking, these political subdivisions of the state do not own property which is not held for a public purpose or used for the benefit of the public. However, the very wording of this constitutional provision indicates that they could own property which might not be held only for public purposes or might not be put to a public use exclusively and would not be covered by the exemption.

In the case of A. & M. Consolidated Independent School District v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914, the question was whether the City of Bryan, which owned and operated a rural electrification system for the purpose of furnishing electricity to the inhabitants of Bryan and the surrounding rural territory and one nearby incorporated city was exempt from taxation. And, as here, the proceeds received from said property were put into the city's treasury and were available to it for use only for public purposes. However, the court, in holding that the property was exempt from taxation, did so on the ground that the use to which the property was put was for public purposes, saying: "It is used primarily for the comfort and welfare of the people, and all the public has the right to use it under reasonable and uniform regulations." Under that definition of public purposes

we cannot say that the property in the instant case is owned and held by the City of Beaumont solely for public purposes. Neither can we say it is "property devoted exclusively to the use and benefit of the public." It is argued that this holding is in conflict with that of Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99 (1888) which held that the county school lands leased out to private persons for grazing purposes were held for public purposes and were used exclusively for the use and benefit of the public. However, we think that case is distinguishable from this one. As we construe that opinion the court based its holding on the fact that Article VII, Section 6 of the Constitution provides that the revenues from said lands should constitute an available fund for the maintenance of public schools. It says:

"In view of the provisions made by the constitution of this state for the establishment and maintenance of public free schools, no one would contend that lands held by counties for that purpose were not held solely for a public purpose. Lands so set apart, and solemnly appropriated for a purpose so essentially public as is the maintenance of public free schools, must be said to be 'property devoted exclusively to the use and *benefit* of the public.' Such property the constitution exempts from taxation." (Emphasis added.) Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99 (1888).

The Court reasoned that such constitutional provision made the leasing of such lands for the purpose of raising revenue for the maintenance of schools a public purpose and that therefore such school lands necessarily were covered by the provisions of Article XI, Section 9 of the Constitution. We find no such constitutional provision as Article VII, Section 6, applying to land owned by cities which requires us to construe the leasing of city owned land for private purposes as coming within the provisions of said Article XI, Section 9. Consequently, we find no merit in respondents' second contention.

■ Respondents' first contention is that Article 7173 does not apply to the leasehold involved here because the lands are taxable to the City. In this regard they contend that since this property is public property not used for public purposes the Legislature is prohibited from exempting it from taxation by Article VIII, Section 2, of the Constitution. While property owned by cities is public property, it is not the type of public property to which Article VIII, Section 2 is applicable. The pertinent parts of that section are as follows:

"Article VIII, Section 2. All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; *but the legislature may, by general laws, exempt from taxation public property used for public purposes;* actual places or [of] religious worship, * * * places of burial not held for private or corporate profit; all buildings used exclusively and owned by persons or associations of persons for school purposes * * * and institutions of purely public charity; and *all laws exempting property from taxation other than the property above mentioned shall be null and void."* (Emphasis added.)

Article VIII, Section 1 of the Texas Constitution provides:

"Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, *other than municipal,* shall be taxed in proportion to its value, which shall be ascertained as may be provided by law * * *." (Emphasis added.)

■■ It can be readily seen that the only property required to be taxed by the Constitution is private property held by natural persons or private corporations. Municipal corporations are specifically excepted. It may be noted also that there is no requirement that state property or federal property be taxed. The Legislature through its general powers inherent in sovereign governments could provide for taxation of

property not covered in Article VIII, Section 1, unless prohibited by the Constitution. Also, Article VIII, Section 17 of the Constitution provides as follows:

> "Sec. 17. The specification of the objects and subjects of taxation shall not deprive the Legislature of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this Constitution."

The Constitution does prohibit the taxation of "[t]he property of counties, cities and towns, owned and held for public purposes * * * and all other property devoted exclusively to the use and benefit of the public * * *." Article XI, Section 9.

In the case of Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99, the Court clearly defined what was meant by the words "public property used for public purposes" as used in Article VIII, Section 2, in these words: "That section of the constitution seems to apply to property owned by persons or corporations in private right, but which, from the use to which it is applied, is, in a qualified sense, deemed public property."

This Court in 1945, in the case of Lower Colorado River Authority v. Chemical Bank & Trust Co., 144 Tex. 326, 190 S.W.2d 48, reaffirmed that interpretation by the following statement:

> "Nor are we under any obligation, under the facts of this case, to harmonize Art. XI, Sec. 9, supra, with Art. VIII, Sec. 2, of the Constitution of Texas, which declares that the legislature 'may, by general laws, exempt from taxation public property used for public purposes.' That duty likewise was performed for us a long time ago by Chief Justice Stayton when he said, in Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99, 102: 'As before said, section 2, art. 8 of the constitution, gave to the legislature power to exempt *property held in private ownership, but used for purposes which give to it a public character.* (Italics ours.) * * *"

The necessary import of the above holding is that the term "public property" used in said constitutional provision does not include municipal property, and this holding is sound because the Legislature does not need any constitutional authority to exempt property from taxation that is not required by the Constitution to be taxed. The property described in Section 2 of Article VIII would be required to be taxed by Article VIII, Section 1, but for the authority given to the Legislature in said provision to exempt such property if it so desires. It logically follows that if the Constitution authorizes the Legislature to exempt certain property which otherwise would be covered by Article VIII, Section 1, then the limitation placed on the Legislature by the closing words of said Section 2, "all laws exempting property from taxation other than the property above mentioned shall be null and void" applies only to property required to be taxed under Article VIII, Section 1.

A recent provision of the Constitution provides as follows:

> "Art. VIII, Section 1–a.

> "From and after January 1, 1951, no State ad valorem tax shall be levied upon any property within this State for general revenue purposes. From and after January 1, 1951, the several counties of the State are authorized to levy ad valorem taxes upon all property within their respective boundaries for county purposes, except the first Three Thousand Dollars ($3,000) value of residential homesteads, not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation, *in addition to all other ad valorem taxes authorized by the Constitution of this State,* provided the revenue derived therefrom shall be used for construction and maintenance of Farm to Market Roads or for Flood Control, except as herein otherwise provided.

> "* * *." (Emphasis added.)

It can be seen that this constitutional provision gives counties the authority to add on to the ad valorem taxes already *authorized* by the Constitution, an amount not exceeding thirty cents per hundred dollars valuation for lateral road and flood control purposes only. The Legislature has, by Article 7048a, V.A.T.S., provided the machinery by which the county can put this tax into effect, that is, by a vote of the people. There is no showing in this record that the County has ever levied any tax for the purposes authorized by said constitutional provision; therefore, the question of whether municipal property can be taxed by the County under this Article is not before us.

■■■■■ By Article 7145, V.A.T.S., the Legislature required that all property, except that which is expressly exempted, shall be taxed. Article 7150, V.A.T.S., exempts "All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, or the United States, * * *." While the Legislature could authorize taxation of property of a city which is not exempt by virtue of Article XI, Section 9 of the Constitution, it appears that by Article 7150, Section 4, the Legislature has chosen *not* to authorize taxation of the property of the state's political subdivisions as well as that of the state and of the federal government. Therefore, this land belonging to the City of Beaumont, a political subdivision of the state, is exempt from taxation under the provisions of said statute.

It was said in the case of Big Lake Oil Company v. Reagan County, 217 S.W.2d 171, at 173 (Tex.Civ.App.1948, error refused):

"It is deemed to be elementary that in order to warrant an assessment and collection of a tax the legal authority must be found in the Constitution or Statutes of the State."

The land is exempt in the hands of the City. By virtue of Article 7173, supra, the leasehold becomes taxable, valued in accordance with Article 7174, supra. This tax is assessable, not against the City, but against the lessees, respondents herein.

■■■■ In making our holding that Article 7150, Section 4, V.A.T.S., provides for the exemption of municipal property regardless of the use to which it is put or the purpose for which it is held, we are not unmindful of the fact that although a number of cases have reached the appellate courts wherein the taxation of municipal property has been involved, no such court has so construed said statutory provision. On the other hand, no appellate court has ever been confronted with the question as we have it presented to us, that is, whether or not municipal property not held or used for public purposes is taxable. There have been cases where the property could have been held to be exempt under Article 7150, Section 4, but the courts have found other grounds under our constitutional and statutory provisions for exempting the property in question in the particular case.

In the case of Galveston Wharf Co. v. City of Galveston, 63 Tex. 14, wherein it was held that the property involved was exempt under Article XI, Section 9 of the Constitution, the court did raise the question that there might be some property belonging to municipal corporations, which would not be exempt from taxation but that "it would be time enough to consider what kind of property, if any, belonging to a municipal corporation is subject to taxation when a case requiring its decision is presented." The instant case is the first case, requiring such a decision, that has been presented.

In the case of City of Abilene v. State, 113 S.W.2d 631, Tex.Civ.App., writ dismissed, the question of whether municipal property not held or used for a public purpose would be exempt under Article 7150, Section 4, was discussed and it was held that it would not. However, in that case the court was not required to pass on the question because the court said that the property involved was held for a public

purpose. In making its holding in regard to municipal property not held or used for public purposes it assumed, without saying so, that the Constitution required the taxation of municipal property and further it assumed that Article VIII, Section 2, applied to municipal property, ignoring the holding in Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99, by this Court, that such section applied only to "property owned by persons or corporations in private right but which from the use to which it is applied is in a qualified sense deemed public property."

The court in the City of Abilene case, without making these erroneous assumptions, could not have reached the result it did. For that reason the opinion is unsound and we disapprove it.

In the case of A. & M. Consolidated Independent School District v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914, the court, in determining the question of whether or not rural electrification lines belonging to the City of Bryan were subject to taxation stated that the pertinent provisions of our Constitution are Article VIII, Section 2, and Article XI, Section 9. It specifically did not determine whether or not the property in question was classified as being under Article XI or Article VIII because the property was exempt under Article 7150, Section 4, V.A.T.S. It is true the court in so holding did say that the property was used for public purposes. Its final holding was:

"The property in question appears to be used for a public purpose. It is used primarily for the comfort and welfare of the people, and all the public has the right to use it under reasonable and uniform regulations. The proceeds received for its use by the public go into the public treasury and are available for use only by the political subdivision for public purposes. We therefore hold that the property is 'public property used for public purposes,' and is exempt from taxation under the Constitution and statutes of this State. * * *"

We do not construe our holding in the instant case to be in conflict with the holding in that case. It does not hold that Article 7150, Section 4, did not exempt municipal property not used for public purposes from taxation, and does not limit the exemption to property used for public purposes.

We think the confusion which has grown up on the question of taxation of municipal property has come about because most of the states by constitutional provision require all property to be taxed except publicly owned property used for public purposes and those states require taxation of publicly owned property not used for public purposes. However, our state has a peculiar taxing system unlike any other state we have found in our research. Our Constitution requires all private property to be taxed except that which must be specifically exempt by the Constitution and that which the Legislature may or may not exempt. This leaves the power to authorize or not to authorize taxation of municipal property with the Legislature. The Legislature has seen fit not to authorize taxation of such municipal property, but has provided for the taxation of long term leaseholds on municipal property whereby taxes will be paid by the owner of the beneficial interest in the property.

The question still remains, is the 1935 amendment invalid for the reason that it amounts to an agreement for the commutation or exemption of taxes for which respondents may be liable on the leasehold estate? We say it is not invalid for two reasons: First, paragraph 9 of the 1928 contract quoted above does not deal with taxes which may be assessable against the leasehold. It only deals with taxes which may be assessable against the property covered by the lease. The respondents would not be liable for any such taxes except by contract and, as stated above,

respondents could be relieved of this contractual obligation for a valid consideration, and we have held that there was such a consideration moving from the respondents to the petitioner. In the second place, if paragraph 9 of the 1928 contract could be construed to cover taxes on the leasehold, respondents' agreement to pay them furnished no part of the consideration for the 1928 contract because they were obligated by law to pay them. Consequently, the new consideration provided in the 1935 amendment, being in lieu only of the consideration provided in the 1928 contract, could not be for the remission of taxes which may be due against the leasehold estate.

Insofar as the judgments of the courts below declare the 1928 lease contract and the 1935 amendment valid, they are hereby affirmed. Insofar as they declare the 1933 amendment to be valid, we reverse and here render judgment canceling the 1933 amendment.

WALKER, GREENHILL and STEAKLEY, JJ., dissenting.

## DISSENTING OPINION

WALKER, Justice.

I am unable to agree with the holding that the second sentence of Article VIII, Section 1, of our Constitution leaves the Legislature free to tax or to exempt municipal property which is not used or held for a public purpose. When the authors of our fundamental law intended to allow property to escape taxation, they specifically provided that it should or might be exempt. In some instances the exemption is granted by the Constitution itself. See Article VIII, Sections 1 and 1–b; Article XI, Section 9. Under the provisions of the last mentioned section, "[t]he property of counties, cities and towns, owned and held only for public purposes" and "all other property devoted exclusively to the use and benefit of the public" is automatically exempt. The Legislature is then authorized by Article VIII, Section 2, to exempt certain other property, but it is provided in unmistakable terms that "all laws exempting property from taxation other than the property above mentioned shall be null and void." In the light of these provisions, it seems clear to me that it was intended that all property should be subject to taxation unless it is expressly exempted by the Constitution or by the Legislature pursuant to explicit constitutional authority.

It is generally held that where the constitution enumerates property which is or may be exempted, the legislature has no power to exempt property other than that enumerated. See Cooley, The Law of Taxation, 4th ed. 1924, § 661. The Texas Constitution has always been so construed by our courts. In City of Wichita Falls v. Cooper, Tex.Civ.App., 170 S.W.2d 777 (wr. ref.), the court said:

"It is clear to us that it was intended by the framers of our Constitution that all property should be subject to taxation, upon an equal and uniform basis for the purpose of defraying the governmental expense, with the exception only of such property as that document specifically exempts therefrom and such as the Legislature shall, under Constitutional restrictions, by explicit language, declare to be exempt.

"It is the universal rule in this state that the Constitution has definitely provided for every form of exemption of property from taxation; that if an exemption is so made it cannot be enlarged upon either by the Legislature or by the courts. Some courts have gone far enough to say that if there is a reasonable doubt as to the meaning of the Constitution in matters of exemptions, the doubt will be resolved against the exemption, for exemptions from taxation are not favored by the Constitution nor by the Courts in their construction. City of Dallas v. Cochran, Tex.Civ.App., 166 S.W. 32, writ refused; Jones v. Williams,

121 Tex. 94, 45 S.W.2d 130, 79 A.L.R. 983."

We have already signified our unqualified approval of these conclusions, and in my opinion they are still sound. The idea that the exception in Article VIII, Section 1, might exempt all municipally owned property was advanced over 80 years ago.[1] If there were any merit in the suggestion, it seems reasonable to suppose that the same would have been eagerly embraced by the courts in subsequent cases involving the taxation of property belonging to municipal corporations. They would thus have found it unnecessary ever to consider whether the property was being used or held for a public purpose. Instead of availing themselves of this easy solution, however, our courts have consistently proceeded on the theory that municipal property cannot escape taxation unless it is held or used for a public purpose. A. & M. Consolidated Independent School Dist. v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914; Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99; State v. City of Houston, Tex.Civ.App., 140 S.W.2d 277 (wr. ref.); City of Dallas v. State, Tex.Civ.App., 28 S.W.2d 937 (wr. ref.); State v. City of Beaumont, Tex.Civ.App., 161 S.W.2d 344 (no writ); City of Abilene v. State, Tex. Civ.App., 113 S.W.2d 631 (wr. dis.).

In *City of Abilene* the state sought to tax land acquired by the city for a reservoir site. The property was leased for agricultural purposes pending the accumulation of sufficient funds to complete the project. After noting that municipal property was excepted from the second sentence of Article VIII, Section 1, the court pointed out that the land in question was undoubtedly covered by the statutory exemption found in Article 7150. It concluded, however, that the Legislature was without power to exempt municipally owned property which was not used for public purposes, and held that Article 7150, in so far as relevant here, is valid and operative only to the extent that it includes public property used for public purposes.

This is the background against which *A. & M. Consolidated Independent School District* was decided. The school district was there attempting to tax rural electrification lines owned by the city, and the property was held to be exempt because it was owned by a municipality and was used for a public purpose. In considering this question, the Court cited *Daugherty, City of Abilene,* and Galveston Wharf Co. v. Galveston, 63 Tex. 14. Although the opinion in each of these cases emphasizes the exception of municipal corporations in the second sentence of Article VIII, Section 1, we declared that the pertinent provisions of our Constitution are Section 2 of Article VIII and Section 9 of Article XI. Section 4 of Article 7150 was also given the construction adopted in *City of Abilene,* i. e. that the statute exempts only such municipal property as may be used for public purposes, and the case was made to turn upon whether the electric lines were so used.

The Court now takes the position, contrary to all that we have previously said, that Section 2 of Article VIII and Section 9 of Article XI are wholly irrelevant, and that Article 7150 effectually exempts all property owned by a municipality regardless of the purpose for which it is held or how the same may be used. According to the majority opinion, the Texas courts have been wasting their time all these years in considering whether municipal property was used or held for a public purpose, because there is simply no constitutional provision requiring that such property be taxed.

[1] In Galveston Wharf Co. v. Galveston, 63 Tex. 14, Justice Stayton said in passing that "Section 1, article 8, of the constitution in providing for taxation seems to exempt all property belonging to municipal corporations from taxation; but * * *."

Again in Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99, the same writer observed that this section "does not require property belonging to municipal corporations to be taxed."

In my opinion the support and comfort which the majority seems to find in quoted excerpts from the opinions in *Daugherty* and Lower Colorado River Authority v. Chemical Bank & Trust Co., 144 Tex. 326, 190 S.W.2d 48, are illusory at best. The two decisions are not nearly as broad as they are now interpreted. In each case the Court was concerned with the meaning of "public property used for public purposes" in Section 2 of Article VIII. That is the provision which was said to apply to private property used for public purposes, and it is clear from the opinions that this is all the Court meant to say with reference to Section 2. The final clause of Section 2 was not even remotely involved, and no court has ever said, held or suggested that the same applies only to laws exempting privately owned property. It also seems to me that the Court's present construction of that provision is patently unsound. The declaration that "all laws exempting property from taxation other than the property above mentioned shall be null and void" makes it quite plain that the Legislature shall have no power to exempt any property other than that previously mentioned.

The Court is now holding for the first time that the Legislature may exempt municipal property devoted to private use. Section 1–a of Article VIII provides that "the several counties of the State are authorized to levy ad valorem taxes upon all property within their respective boundaries for county purposes." Each county is thus granted the power to tax all property not exempted by the Constitution or by the Legislature under constitutional authority, and there is no provision exempting or authorizing the exemption of municipal property which is not held or used for a public purpose. How then may property be exempted by legislative act when the several counties are expressly empowered by the Constitution to tax the same?

Under the majority holding in this case, municipal property used for private purposes will not be subject to taxation on the same basis as privately owned property used for a similar purpose. If the lease is for a term of less than three years, the property as well as the leasehold will be exempt. When the lease is for a term of three years or more, Article 7173 would seem to require that the lessee pay taxes based upon the full taxable value of the property. It is well settled, however, that the lessee is taxed not "upon the value of the lands leased, but only on the value of the leasehold." State v. Taylor, 72 Tex. 297, 12 S. W. 176. This is the effect of Article 7174, which declares that "[t]axable leasehold estates shall be valued at such price as they would bring at a fair voluntary sale for cash." Daugherty v. Thompson, supra.

The taxable value of the leasehold must be determined, therefore, substantially in accordance with the rules that govern its valuation in condemnation proceedings. In other words the value of the leasehold is the amount for which it can be sold for cash burdened with the covenant to pay rent and the other obligations imposed upon the lessee by the terms of the lease. See Urban Renewal Agency v. Trammel, Tex. Sup., 407 S.W.2d 773, and authorities there cited. If municipal property is leased at a rental that is reasonable for the period and under the various provisions of the lease, the taxable value of the leasehold will be zero. Both the property and the leasehold will thus escape taxation entirely. It is true that this may place the lessor-municipality in position to exact more rent than might be charged by a private owner for the same lease, but other taxing agencies will be deprived of revenues guaranteed to them by our Constitution and statutes. The amount of privately used property that will be exempted by means of the leasing device, which the Court now sanctions, is limited only by the discretion of and the funds available to the municipal authorities.

I would hold that the property involved in this case is subject to taxation by all taxing agencies except the lessor-municipality. See comment under Article XI, Section 9, Vernon's Ann.Tex.Constitution.

If that is the effect of the Constitution, as our courts have always reasoned, then the lessor-municipality can be expected either to charge enough rent to reimburse itself for the taxes it must pay and those it could collect if the property were privately owned, or include in the lease a stipulation obligating the lessee to pay the taxes. That is what the private landowner does when he leases his property. That is what the City of Beaumont did in this instance. When the interests of the municipality can be so easily protected by contract, it is my opinion that the property should not escape taxation either wholly or in substantial part, as it will under the majority holding. As I read the Constitution and statutes, the leasehold in this case is not taxable and the 1935 amendment to the lease is valid and binding on the parties.

I also disagree with the Court's interpretation of Paragraph 9 of the lease and the 1935 amendment. Respondent agreed in the original lease to pay each year "an amount equal to all taxes that would be assessable by Lessor against said property if same were taxable." The 1935 amendment obligated it to pay $2,000.00 annually in lieu of the payments provided in Paragraph 9 of the lease. According to the reasoning of the majority, these provisions deal only with taxes assessable against the property as such and not those that might be assessed against the leasehold. The leasehold is undoubtedly an interest in the property. It was pointed out in *Daugherty* that if a situation should arise in which both the property and the leasehold were subject to taxation, the value of the leasehold should be deducted in assessing the property to the owner. "[F]or otherwise there would be double taxation, which, if permissible, will not be presumed to have been intended, in the absence of a law that will not bear any other reasonable construction." Daugherty v. Thompson, supra.

It seems to me that the same can be said of the original lease and the 1935 amendment in this case. Since the value of the leasehold would be deducted in valuing the property for taxation against the owner, the taxes on the leasehold are essentially part of the taxes on the property. The parties obviously did not intend for the lessee to pay an amount equal to the taxes that would be assessable against the property if the same were taxable, or $2,000.00 in lieu thereof, and then be further obligated to pay taxes on the leasehold. In my opinion Paragraph 9 of the lease, as well as the 1935 amendment, covers and includes taxes that might be assessed against the lessee.

I do not understand the second reason advanced in support of the holding that the 1935 amendment does not involve the commutation of taxes assessable against the lessee. The Court says that respondent's agreement to pay taxes on the leasehold furnished no part of the consideration for the 1928 contract, but that is not our problem. We are concerned with the 1935 amendment which, as the Court assumes at this point, covered taxes which the lessee would otherwise be obligated to pay on the leasehold. Respondent there agreed to pay $2,000.00 annually in lieu of such taxes and certain other obligations imposed upon it by the lease. This agreement is clearly supported by consideration on both sides unless the city's implied promise to accept $2,000.00 in payment of taxes that might be assessed against the lessee is an unlawful attempt to abdicate its power of taxation. That is our problem. That is the question which should be faced by the Court. If the majority is correct in holding that the property is exempt as to the city, it is my opinion that the 1935 amendment is invalid in so far as the $2,000.00 annual payment is concerned.

GREENHILL and STEAKLEY, JJ., join in this dissent.