### STATE v. CITY OF HOUSTON et al.
#### No. 11068.

Court of Civil Appeals of Texas. Galveston.
April 25, 1940.

Rehearing Denied May 16, 1940.

Dan W. Jackson, Cr. Dist. Atty., and Marshall T. Anderson and Morris G. Rosenthal, Assts. Cr. Dist. Atty., all of Houston (Tod R. Adams, of Houston, of counsel), for appellant.

Sewall Myer, City Atty., and Will Sears, Asst. City Atty., both of Houston, for appellees.

CODY, Justice.

This suit was brought by the State for itself and Harris County, acting by the Criminal District Attorney of Harris County, to collect taxes for the years 1933–1936 on certain property owned by the City of Houston. The case was tried largely upon stipulated facts. It was stipulated that the City of Houston purchased on March 19, 1928, a tract of land 207x98.5 feet for the sum of $26,000, with money derived from a bond fund voted by the electors of the City on April 13, 1925, which fund and the bonds issued thereunder are known as the "Roadways to Turning Basin Bond Fund and Bonds"; the tract was purchased for the purpose of opening Navigation Boulevard, a street in the City of Houston; the Roadways to Turning Basin Bonds to the extent of $728,000 are outstanding, and will not finally mature until 1957; the City, of course, annually levies a special tax to provide for the sinking fund to retire such bonds, and to pay the interest thereon; the northerly 69.6x98.5 feet of the aforesaid tract now forms a part of Navigation Boulevard, and no attempt is made to collect taxes thereon; the City of Houston, however, purchased the entire tract because it was a much better bargain to do so than just to buy the portion that was to be incorporated in the street; the City is and has always been willing to dispose of its excess purchase at a fair price, but has never received a fair offer therefor; there were three houses upon said land at the time of the purchase, and two of them were removed from the portion of the land used in laying out Navigation Boulevard onto the remaining portion of the land, upon which taxes were sought to be collected in this suit; these houses have been kept rented, and the rents paid into the general fund.

The case was tried without a jury, and from an adverse judgment the State appeals.

It is not contended that the City did not have the authority to buy the entire tract out of the special fund, even though only a portion of the tract was to be used for opening Navigation Boulevard. An owner of property frequently not only collects for the value of the property actually taken for roadway purposes, but also for damages to his remaining property, so that it may well constitute a better bargain for a City to acquire all of the tract, than merely a portion thereof, and pay damages to the owner on the balance. It must be taken, therefore, that the City purchased the tract here involved in order to preserve the "Roadways to Turning Basin Funds". The judgment of the trial court holding that the property is not taxable is clearly sustainable if the property was not merely public property but is also held for a public purpose. The fact that the property was rented to private persons, and was therefore closed to the public, does not necessarily determine that such property is not held for a public purpose. Certainly the stipulated facts lead to the conclusion that so much of the property as was not bought to be devoted directly to the opening of the Boulevard was bought for the purpose of conserving the "Roadways to Turning Basin Funds". If the property was bought and is being held to preserve such fund, how can it be said that it was not bought, and is not being held for a public purpose? Clearly the fact that the City is renting the property to private persons pending the interval before its sale cannot change the character of the City's interest in the property. When the City does sell such property, it must necessarily apply the proceeds to "Roadways to Turning Basin Funds and Bonds". And the present diversion of the rentals from such property into the general fund is clearly a misapplication. This case, we believe, is ruled by Sherman v. Williams, 84 Tex. 421, 19 S.W. 606, 31 Am.St.Rep. 66. The facts in that case were that a tax collector of the City of Sherman conveyed a tract of land

to the City to satisfy the City's claim against him for money collected by him to meet the City's obligations on an outstanding bond issue. During the time the City held the property and before it could dispose of it, it rented the property to a private person, and credited the rentals to the current expense fund of the City. Williams, a judgment creditor of the City, caused an execution to be levied on such property. The court said:

"The property is not of such character as to be exempt from forced sale as property owned and held only for public purposes * * *. If the property is exempt, it is because it must be held to stand in the same position as would the money collected by the tax collector on a tax levied to meet the interest, and create a sinking fund with which to discharge the bonded indebtedness of the city at its maturity, the validity of which is not questioned. The city of Sherman is under incorporation under the general law, under which it had power to levy and cause to be collected the sum which the collector failed to pay over. That was required to be assessed and collected separately from the taxes assessed and collected for current municipal expenses. Rev.St. art. 437. When assessed and collected, this became a special fund, disbursable only for the purpose for which the fund was created, and any officer misappropriating such a fund is declared to be guilty of malfeasance in office, subject to removal, and thereafter incapacitated to hold any office in the municipality. [Rev.St.] art. 372.

"The constitution provides that 'counties, cities, and towns are authorized, in such mode as may now or may hereafter be provided by law, to levy, assess, and collect the taxes necessary to pay the interest, and provide a sinking fund to satisfy any indebtedness heretofore legally made and undertaken; but all such taxes shall be assessed and collected separately from that levied, assessed, and collected for current expenses of municipal government, and shall, when levied, specify in the act of levying the purpose therefor, and such taxes may be paid in the coupons, bonds, or other indebtedness for the payment of which such tax may have been levied.' Const. art. 11, § 6.

"This makes a tax collected under it a special fund, and in view of the limitations placed by the constitution on municipal taxation, if such a fund by the act of the municipal authorities or otherwise could be directed and used for some other purposes, then constitutional restraints would become inoperative, and citizens subjected to taxation forbidden by the constitution. What cannot be done directly cannot be done indirectly.

"The statute makes the further provision that 'all taxes levied, assessed, and collected for the purpose of paying the interest and principal of bonds heretofore issued by cities or towns to aid in the construction of railroads and other works of internal improvement shall be applied solely to the objects for which they were levied, under the direction of the comptroller, as follows: First, to the payment of assessing and collecting the same; second, to the payment of the annual interest of such bonds, and not less than two per cent. of the principal, and, if there be any excess on hand after making the above payments for the current year, it shall be used in the purchase and cancellation of said bonds.' Rev.St. art. 4778.

"The taxes collected could not have been appropriated to the satisfaction of appellee's claim, had they been paid over by the collector; and for the protection of the taxpayers, as well as creditors, it seems to us that the property in controversy should be deemed a part of the fund, the misappropriation of which made it necessary for the city to acquire title to it.

'If a taxpayer had failed to pay the tax on account of which the money was collected, then on sale of his property, if no bid was made, it would have been struck off to the city, and a deed made to it under which the city would have had power to convey the property to a purchaser from it. [Rev.St.] art. 449. The money received on such a sale would go to the fund on account of which the tax was levied, and we see no reason why the proceeds of the sale of the property in controversy should not belong to the fund on account of which the taxes were paid over by the collector when collected, and the fact that the municipal authorities may have misapplied the rents of the property cannot affect the question."

The trial court's judgment is clearly right if the property constitutes a part of the special fund; and it seems clear to us that such property is so; in any case, the stipulated facts support a finding by the trial court to that effect, and we will assume the court so found. This being so, it is neither taxable nor capable of being sold for taxes, and thus diverted. Of course, if

taxes could be levied on it, it could be seized and sold for taxes.

The rule which appellant contends for, namely, that property held by a municipality in connection with property used for a public purpose but in excess of the amount required for such purpose, is not within the tax exemption provisions, does seem to apply in other jurisdictions. West Hartford v. Water Commissioners, 1877, 44 Conn. 360; Norwalk v. New Canaan, 1911, 85 Conn. 119, 81 A. 1027; Essex County v. Salem, 1891, 153 Mass. 141, 26 N.E. 431; Traverse City v. East Bay Tp., 1916, 190 Mich. 327, 157 N.W. 85; Perth Amboy v. Barker, 1906, 74 N.J.L. 127, 65 A. 201; Clark v. Sprague, 1906, 113 App.Div. 645, 99 N.Y.S. 304; Collector of Taxes of Milton v. City of Boston Supreme Judicial Court of Massachusetts, 278 Mass. 274, 180 N.E. 116, 81 A.L.R. 1515; Anoka County v. City of St. Paul, 194 Minn. 554, 261 N.W. 588, 99 A.L.R. 1137.

However that may be, we are bound by the Sherman v. Williams case, but even if we were not so bound we would adopt the rule there applied, because it seems to us the necessary result of applying the provisions of our Constitution to the facts of this case. The judgment ought to be affirmed, and it so ordered.

Affirmed.