**IRVING INDEPENDENT SCHOOL DISTRICT et al., Appellants,**

v.

**DELTA AIRLINES, INC., Appellee.**

No. 8342.

Court of Civil Appeals of Texas, Texarkana.

Feb. 10, 1976.

Rehearing Denied March 23, 1976.

Arlen D. Bynum, Bradshaw & Bynum, Dallas, for appellants.

William F. Carroll, Clark, West, Keller, Sanders & Butler, Dallas, for appellee.

CHADICK, Chief Justice.

Delta Airlines, Inc. sued the Irving Independent School District, the District's Tax Assessor Collector, its Board of Equalization and Board of Trustees and obtained a

declaratory judgment and permanent injunction. The judgment declared the airline's thirty-five year leasehold interest in a 15.49 acre tract of land and improvements thereon at the Dallas-Fort Worth Regional Airport [1] tax exempt and relieved the airline from tax liability to the school district, as well as, from liens and actions or threats of actions to enforce tax collection so long as the land and improvements are used for repairing, servicing and maintaining the airline's flight and ground equipment in support of its operations at the airport. The school district and its co-defendants have perfected an appeal. The judgment of the trial court is modified and affirmed.

### I.

The initial issue for determination is whether Tex.Rev.Civ.Stat.Ann. art. 7173 (1971), by its terms, excludes the airline's leasehold interest from taxation by the school district. The article provides that property belonging to a city or cities and held under a lease for a term of one year or more shall be considered for taxation purposes as the property of the person holding the lease; however, specifically not included, and therefore excluded from the statute's operation, is a lease of a *public transportation facility.* The parties agree the Cities of Dallas and Fort Worth own the 15.49 acre tract and improvements in suit and leased it to the airline under an agree-

ment dated April 1, 1972. Thus, the airline claims and holds a leasehold estate in city owned realty. There is no evidence supporting a claim by the airline to an actual or lawful use of the demised property in any other right. The question narrows to whether the 15.49 acres of land and improvements are, as a matter of law, under this record a *public transportation facility.*

### II.

The improvements at the time of suit consisted principally of a maintenance hangar connected with the airline passenger terminal and airport runway by an extensive taxiway system. The building is constructed to permit direct entry of aircraft from the taxiways to inspection and repair bays and houses, shops and offices for use in the airline's maintenance program. Wheel, welding, avionics and sheet metal shops, as well as areas for parts storage and storage of flammable material are set apart inside the building. Planes in service are required to undergo frequent inspection, ranging from a service "check" each 24 hours of operation to less frequent major inspections requiring disassembly of engines, etc. Facilities for this purpose must be available. Ground service equipment, that is, tugs used in maneuvering a plane at the terminal loading gate, air conditioning trucks used to cool loading planes prior to activation of engines, belt loaders

---

1. The following extract from one of the briefs on file lends perspective to the litigation: "The Dallas-Fort Worth Regional Airport is located midway between the Cities of Dallas and Fort Worth, Texas and encompasses within its physical boundaries approximately 17,000 acres, or roughly, 26 square miles of land surface area. The Airport, including land, improvements and all facilities located thereon, is owned jointly by the municipalities of Dallas, Texas and Fort Worth, Texas and is administered by the Dallas-Fort Worth Regional Airport Board. Delta leases from the Cities of Dallas and Fort Worth, through the auspices of the Regional Airport Board, passenger terminal facilities, an air cargo terminal and a maintenance facility at the Dallas-Fort Worth Regional Airport. Only the latter lease on the Delta maintenance facility is at issue in this appeal, the other facilities being located outside the boundaries of defendant Irving Independent School District." The development, construction and financing of the airport is traced by Chief Judge William M. Taylor, Jr., in *City of Dallas, Texas v. Southwest Airlines Co.,* 371 F.Supp. 1015 (N.D.Tex.1973) aff'd 494 F.2d 773 (5th Cir. 1974) cert. den. 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974).

used in baggage loading, cars, trucks and similar equipment useful in operating the facility are also housed in the building.

Cities are authorized to construct, operate and maintain airports and have been delegated power to be exercised by them in the execution of such endeavors. Tex.Rev.Civ. Stat.Ann. art. 46d–1 et seq., (The Municipal Airports Act). Cities may " . . . plan, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect and police airports and air navigation facilities, . . . " An *airport* by statutory definition is: " '(A)ny area of land or water which is used, or intended for use, for the landing and take-off of aircraft, and any appurtenant areas which are used, or intended for use, for airport buildings or other airport facilities or right-of-ways, together with all airport buildings and facilities located thereon." An *air navigation facility* is: "(A)ny facility—other than one owned and operated by the United States— used in, available for use in, or designed for use in, aid of air navigation, including any structures, mechanism, lights, beacons, markers, communicating systems, or other instrumentalities, or devices used or useful as an aid, or constituting an advantage or convenience, to the safe taking-off, navigation, and landing of aircraft, or the safe and efficient operation or maintenance of an airport, and any combination of any or all of such facilities."

██ As the quotations from Article 46d–1 show, facilities other than runways and terminals are legislatively recognized as necessary to airport operation. The use of the 15.49 acre tract and its improvements in operational support of air passenger service, as shown by the undisputed facts in this record, brings such facilities within the legislative definitions. There is no warrant for use of a more restrictive standard in this instance. Together, such land and improvements constitute facilities used in and available to use in and designed for use in the safe and efficient operation of the Dallas-Fort Worth Regional Airport and constitute a public transportation facility as contemplated by Article 7173.

### III.

██ The conclusion announced requires this court to confront and decide the issue of whether Article 7173 is unconstitutional because it permits leasehold interests in *public transportation facilities* to escape taxation. The mentioned article is the sole statutory authority for taxation of privately held leasehold estates in city owned real property. A multitude of cases have considered taxation associated with municipally owned property as affected by Texas Constitution Article VIII, Secs. 1, 2 and 17, Article XI, Sec. 9 and Tex.Rev.Civ.Stat. Ann. arts. 7145, 7150, 7173 and 7174. Out of the welter of views expressed in opinions filed in these cases, it is concluded that the law is now settled[2] that the legislature has the power to authorize taxation of privately held leaseholds on municipal property. *Daugherty v. Thompson,* 71 Tex. 192, 9 S.W. 99 (1888); *The City of Beaumont v. Fertitta,* 415 S.W.2d 902 (Tex.1967).

██ Leasehold interests, generally, are not statutorily subjected to taxation. 54 Tex.Jur.2d, Taxation, Sec. 55. See also *Daugherty v. Thompson,* supra; *Phillips Chemical Company v. Dumas School District,* 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384. However, in implementing state tax policy with reference to municipally owned

---

2. Judges Walker, Greenhill and Steakley dissented in *The City of Beaumont v. Fertitta,* however the case was cited as authority on a related point in *Canutillo Independent School District v. City of El Paso,* 514 S.W.2d 466 (Tex.Civ.App. El Paso 1974, writ ref'd). Such Supreme Court approval is doubtful if the principal thrust of *Fertitta* is open to question.

land and improvements, the legislature, by enacting Article 7173, decided that leaseholds in such property having a term of one year or more should be taxed but provided for certain exceptions. Among the exceptions is a lease of a *public transportation facility.* Omitting from taxation a lease on municipally owned property used as a public transportation facility does not run counter to an express or implied command of the constitution; the omission merely equates such leases with leases generally or leases on municipally owned property of less than one year duration.[3] As explained in *Daugherty v. Thompson:*

> "Property exempted from taxation in the hands of its owner while used for the purposes on account of which the exemption is given, will doubtless become subject to taxation if leased, for any period, to be used for a purpose which does not itself give the exemption, unless in cases in which the exemption is given by the constitution, or under a contract that would be impaired by taxation. *While this is true, it does not follow that a lessee will be liable to pay taxes on the leasehold, unless the law so provides. The only law providing that a lessee shall pay taxes on leased property is found in article 4691, Rev.St. (now Article 7173) which determines what leasehold estate shall be taxable."* (emphasis and interpolation supplied).

Article 7173 must be considered a valid legislative enactment as legislative acts are presumed constitutional unless infirmity is clearly manifest. *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974); *Duncan v. Gabler,* 147 Tex. 229, 215 S.W.2d 155 (1948); *Texas Nat. Guard Armory Board v. McCraw,* 132 Tex. 613, 126 S.W.2d 627 (1939).

## IV.

Whether the broad relief granted exceeds the pleading and proof becomes the final issue. Without a prolonged discussion it may be stated that the relief granted was overly broad and more extensive than the record justified. The nature of the use of the leasehold interest determines whether the land and improvements are a *public transportation facility* and its taxable status. Use of the leasehold is subject to change and tax liability is not irrevocably fixed by use at the time of the suit. Nor will the record sustain injunctive relief. Neither irreparable injury nor absence of an adequate remedy at law is shown.

## V.

The judgment of the trial court will be modified to declare that the 15.49 acre tract and its improvements were a public transportation facility as used in 1974 and not taxable by the school district for that period.

As modified the judgment of the trial court is affirmed.

---

**3.** It is not contended that this record shows the omission under consideration is discriminatory.