

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 10, 1992

Honorable Dale W. Elliott
Potter County Attorney
303 Courthouse
Amarillo, Texas 79101

Opinion No. DM-188

Re: Tax exemptions for public property leased to private entities   (RQ-18)

Dear Mr. Elliott:

On behalf of the Potter-Randall County Appraisal District, you ask whether real property owned by three governmental bodies in Potter County is exempt from ad valorem taxation under the circumstances you describe. Your letter stipulates certain facts, and the governmental entities in separate briefs supply additional facts. We will address your questions in light of all the information provided. However, because the answers to your questions depend on the resolution of fact issues, a function that this office cannot perform in the opinion process, our responses are necessarily subject to the facts in a given case. Before addressing the specific scenarios, we will briefly describe the source, nature, and limits of property tax exemptions for government-owned property. '

*A. Tax-exempt status of publicly-owned property.*

Article VIII, section 1 of the Texas Constitution declares in relevant part that

> [a]ll real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

Tex. Const. art. VIII, § 1(b). Article XI, section 9 of the Texas Constitution declares in part that

> property of counties, cities, and towns, owned and held only for public purposes, . . . and all other property devoted exclusively to

> the use and benefit of the public shall be exempt from forced
> sale and from taxation . . . .

This provision is self-executing and requires no enacting legislation. *A & M Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914 (Tex. 1945). Prior decisions of the courts held that despite the specific reference to counties, cities and towns, this provision applied to all political subdivisions. *See, e.g., Lower Colorado River Auth. v. Chemical Bank & Trust Co.*, 190 S.W.2d 48 (Tex. 1945). However, more recent decisions have clarified that the provision applies solely to the enumerated governmental entities. *State v. Houston Lighting & Power Co.*, 609 S.W.2d 263, 266 (Tex. Civ. App.--Corpus Christi 1980, writ ref'd n.r.e.) (citing *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908 (Tex. 1972)); *see also Satterlee v. Gulf Coast Waste Disposal Auth.*, 576 S.W.2d 773, 778-79 (Tex. 1978).

Article VIII, section 2(a) of the Texas Constitution provides in part that the "legislature may, by general laws, exempt from taxation public property used for public purposes." Pursuant to the latter provision, the legislature has enacted section 11.11 of the Tax Code, which provides the following in pertinent part:

> (a) Except as provided by Subsections (b) and (c) of this
> section, property owned by this state or a political subdivision of
> this state is exempt from taxation if the property is used for
> public purposes.

Subsections (b) and (c), which provide for the limited taxation of land owned by the Permanent University Fund and counties, are not relevant to your questions. Section 11.11 supplies other qualifications to the general exemption described in subsection (a), which we will address as appropriate in this opinion.

You ask initially whether the phrase "other than municipal" in article VIII, section 1(b) of the Texas Constitution creates an implied exemption for municipal property. You conclude that it does not. We agree.

As you note in your brief, the supreme court has held that article VIII, section 1 merely specifies the types of property the legislature is *required* to tax. *City of Beaumont v. Fertitta*, 415 S.W.2d 902 (Tex. 1967). Article VIII, section 17 states that the specification of the objects and subjects of taxation in the constitution does not deprive the legislature of the power to require other objects or subjects to be taxed consistently with other provisions of the constitution. The phrase "other than

municipal" in article VIII, section 1 thus means the legislature is not required to tax municipal property, but may provide for such unless the property is otherwise exempted from taxation. Section 11.01 of the Tax Code states in part that all real property that the state has jurisdiction to tax (i.e., any real property located in the state) is taxable unless exempt by law. Tax Code § 11.01(a), (b). Article XI, section 9 exempts from taxation municipal property owned and held for public purposes and section 11.11 of the Tax Code exempts property owned by political subdivisions that is used for public purposes. Thus, the legislature has, consistent with the constitution, provided for the taxation of municipal property.

The essential substantive inquiry under the constitutional and statutory provisions cited above is whether the public property in question is being used for a public purpose. The courts instruct that the test for public purpose is whether the public property is used primarily for the health, comfort, and welfare of the public. *A & M Consolidated Independent School District*, 184 S.W.2d 914; *Houston Lighting & Power Company*, 609 S.W.2d at 266. In addition, it must be shown that the property is held *only* for public purposes and is devoted *exclusively* to the use and benefit of the public. *Satterlee*, 576 S.W.2d at 778-79. Consequently, public property that is acquired and held with the intention that it *not* be used primarily for the health, comfort, and welfare of the public is not entitled to a tax exemption under these provisions. *See Grand Prairie Hosp. Auth. v. Dallas County Appraisal Dist.*, 730 S.W.2d 849 (Tex. App.--Dallas 1987, writ ref'd n.r.e); *Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281 (Tex. App.--Fort Worth 1986, writ ref'd n.r.e.).

Each of the scenarios you describe involves public property that is leased to private individuals or other political subdivisions. Property of a political subdivision will not lose its tax exemption if a charge is made for the property or a profit is generated thereby, provided the charges are incidental to its use by the public and the proceeds inure to the benefit of the political subdivision. *Lower Colorado River Authority*, 190 S.W.2d 48; *A & M Consolidated Independent School District*, 184 S.W.2d 914. However, where a political subdivision specifically intends its public property to be put to private commercial uses, it is not used exclusively for the use and benefit of the public within the meaning of these provisions and, thus, is not entitled to tax-exempt status. *Grand Prairie Hospital Authority*, 730 S.W.2d 849; *Tarrant Appraisal District*, 707 S.W.2d 281; Attorney General Opinions JM-405 (1985); MW-430 (1982).

### B. Tax-exempt status of property owned by city of Amarillo.

#### 1. Airport hangar.

You advise that the City of Amarillo is constructing an airport hangar at the city-owned Amarillo International Airport which will be leased to a private entity as a facility for the repair, maintenance, and storage of aircraft. You ask whether this property, owned by the municipality but dedicated to an allegedly private use, is exempt from ad valorem taxation. If it is exempt, you ask whether the leasehold is exempt from taxation to the lessee pursuant to section 25.07 of the Tax Code.

In a brief to this office, the City of Amarillo indicates that the airport property is being developed pursuant to the Municipal Airports Act, V.T.C.S. articles 46d-1 through 46d-22. Article 46d-15 in pertinent part broadly declares that the acquisition of any land or interests in land pursuant to the act, and the development, maintenance, construction, equipment, and operation of airports and air navigation facilities are public, governmental, and municipal purposes. Attorney General Opinion JM-464 (1986) in similar fashion concluded that

> as a matter of law ... [a] city's airport and airport facilities, including those leased to a private individual, are impressed with a public purpose sufficient to meet Texas constitutional and statutory tests regarding ad valorem taxes.

Attorney General Opinion JM-464 at 3. In *Irving Indep. Sch. Dist. v. Delta Airlines, Inc.*, 534 S.W.2d 365 (Tex. Civ. App.--Texarkana 1976, writ ref'd n.r.e.), the court ruled that a maintenance hangar is necessary to the operation of an airport under the Municipal Airports Act, and thus was entitled to a tax exemption under the statutory predecessor to section 25.07 of the Tax Code.[1] The case did not concern the tax-exempt status of the underlying real property, but the case is instructive because it acknowledges that under usual circumstances aircraft maintenance facilities are necessary to the safe and efficient operation of a municipal airport. On the basis of the factual similarity of the city's intended use of the airport hangar to the uses considered in these authorities, the city argues that the hangar is entitled to tax exempt status.

---

[1]Section 25.07 is derived from V.T.C.S. article 7173. It will be discussed in greater detail below.

At issue in Attorney General Opinion JM-464 was the tax status of property owned by a municipality and operated as an airport. A portion of the airport proper was leased to an individual who operated an aircraft fueling facility, and another portion was operated by the United States Government as a weather station and air traffic control facility. Land surrounding the airport was leased to private persons and corporations for private commercial and agricultural purposes. The opinion concluded that the airport facility itself was exempt from ad valorem taxation, but the surrounding land was not exempted because it was not put to an actual, exclusive public use as required by the constitution and Tax Code.

Under the facts presented in the opinion, it is apparent that the use of the airport property by the fueling facility lessee and the federal government was in direct support of the city's operation of the airport.[2] In contrast, the private use of the surrounding airport property extinguished the city's tax exemption precisely because the use bore no relationship to the city's operation of the airport. We thus construe Attorney General Opinion JM-464 to require a showing that the use of municipal airport property is in direct support of the city's operation of the airport. In the absence of such a showing, the mere use of airport property for aircraft-related maintenance is insufficient to protect the city from liability for ad valorem taxes.

The City of Amarillo contends that the airport hangar in question will be used to support the city's safe and efficient operation of the airport. If this is the case, then we agree that the private commercial use of the facility will not jeopardize the property's tax-exempt status. However, you contend that most of the aircraft stored and serviced at the city-owned hangar will be brought there solely for purposes of maintenance and storage and will not be engaged in the transport of passengers and cargo to and from the airport. If this representation is correct, the facility would not be used exclusively in support of the city's operation of the airport, but would instead be used to serve the private commercial interests of the lessee. The property under these circumstances would not be entitled to a tax exemption because it is not used exclusively for public purposes and therefore does not satisfy constitutional and statutory criteria. *See Grand Prairie Hospital Authority,* 730

---

[2]Under the lease agreement, the operation of the fueling facility, though admittedly for private commercial gain, was subject to the direction and control of the city. The weather station and air traffic control facility were obviously necessary to the operation of the airport.

S.W.2d 849; *Tarrant Appraisal District*, 707 S.W.2d 281; Attorney General Opinions JM-405; MW-430.

As noted, this office cannot resolve disputed questions of fact in the opinion process. Because the city offers facts that conflict with the information supplied by your office, we cannot resolve your first question as a matter of law. Rather, the resolution of this issue must await the development of facts in an appropriate administrative or judicial forum.

The same must be said with respect to your next question -- whether the leasehold interest in the hangar is exempted from taxation to the lessee. Leasehold interests generally are not taxable to a lessee. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872 (Tex. 1990). Rather, the lessor is traditionally held responsible for taxes on the full value of the property. *Id.* Consequently, if the airport property is determined not to be tax exempt, the city rather than the lessee would be liable for ad valorem taxes on the property.[3] If, on the other hand, the underlying real property is determined to be tax-exempt, it will become necessary to determine the tax status of the leasehold interest in the hangar.

Section 23.13 of the Tax Code requires appraisal at market value of a "taxable leasehold or other possessory interest" in real property that is exempt from taxation to the owner. Section 25.07, meanwhile, requires certain leaseholds and other possessory interests in real property that is exempt from taxation to the owner to be listed on the appraisal rolls in the name of the owner of the possessory interest if the interest is at least one year in duration.[4] Tax Code § 25.07(a). These provisions have consistently been interpreted to require taxation of leasehold interests in tax-exempt real property, including property owned by political subdivisions. *See Tarrant Appraisal Dist. v. American Airlines, Inc.*, 826 S.W.2d 767 (Tex. App.--Fort Worth 1992, writ denied); *Delta Airlines*, 534 S.W.2d 365; Attorney General Opinion JM-1049 (1989).

---

[3]Parties to a lease typically take into account the lessor's property tax liability when negotiating the terms of the lease, either by contractually providing for a pass through of taxes to the lessee or setting rentals in an amount that reflects the estimated tax liability. *Cherokee Water Company*, 801 S.W.2d at 875 n.3 (Tex. 1990).

[4]We assume for purposes of this opinion that the lease of the city's airport hangar is for a term of at least one year.

Section 25.07 excepts certain leasehold and possessory interests from its listing requirements.   A leasehold interest that is excepted from the listing requirement of section 25.07 is itself exempt from taxation to the lessee.   *Delta Airlines*, 534 S.W.2d 365.   Among the exceptions is one for a "public transportation facility owned by an incorporated city or town." Tax Code § 25.07(b)(3).   In addition to constituting a public transportation facility, the property in which the leasehold or other possessory interest lies must satisfy one of several alternative requirements. One such alternative is that the property be used as

> an airport passenger terminal building *or a building used primarily for maintenance of aircraft* or other aircraft services, for aircraft equipment storage, or for air cargo.

Tax Code § 25.07(b)(3)(A) (emphasis added).

Aircraft maintenance facilities, including maintenance hangars, which are intended for use in the safe and efficient operation of a municipal airport are public transportation facilities for purposes of section 25.07.   *Delta Airlines*, 534 S.W.2d 365.   The city in its brief contends that the airport hangar in question will be devoted to similar uses.   If the city's representations are correct, the leasehold interest in the city-owned airport maintenance hangar is exempt from taxation to the lessee so long as the facility is used to support the safe and efficient operation of the airport by the city.[5]

---

[5]The city alludes to other leasehold interests at the airport, *e.g.*, restaurant, lounge, and airline leases, and argues that these interests are also exempted from taxation to the lessees because they support the general public purpose of air transportation at the airport.   A recent case indicates that the mere operation of a facility in support of airline operations may not be sufficient to confer tax-exempt status on a leasehold interest in airport property.   *Tarrant Appraisal Dist. v. American Airlines*, 826 S.W.2d 767 (Tex. App.--Fort Worth 1992, writ denied) concerns the proper method for valuation of an airline's leasehold interest in tax-exempt airport property.   American Airlines leased 300 acres of land and improvements from the DFW Regional Airport Board.   Neither the nature nor the purpose of the leased property were described in the opinion.   The court did not examine in detail the tax-exempt status of the leasehold interest under section 25.07 of the Tax Code.   Rather, the court concluded that the lease "results in a taxable leasehold estate to American because the DFW Board is an exempt owner." 826 S.W.2d at 768.   Furthermore, section 25.07 attaches several conditions to the exemption of leasehold interests in public transportation facilities, most of which relate either to *aircraft* services or foreign trade zone status.   Thus, it should not be assumed that any leasehold interest in airport property is entitled to tax-exempt status *per se*.   *See also* Attorney General Opinion JM-464.   Whether such property is used by a lessee for a public purpose will depend on the facts of each case.

### 2. *Buildings leased to private businesses.*

You also state that the City of Amarillo owns several buildings which currently are not used by the city but are instead leased to private businesses. You do not describe the conditions under which the city holds and leases such property or the particular uses put to the property. The city does not contest your representation of the facts. You ask whether these buildings are exempt from ad valorem taxation; you conclude they are not.

Prior opinions of this office conclude that public property put to a private use will remain tax-exempt where the private use can either be characterized as a public purpose or is in direct support of a public purpose of the political subdivision. *See* Attorney General Opinions JM-1049 (lease of real property comprising permanent school fund to private commercial interests is a public purpose where proceeds deposited in permanent school fund); JM-464. However, the leasing of public property purely for private commercial uses removes the tax exemption for the property under both constitutional and statutory standards. *See Grand Prairie Hospital Authority*, 730 S.W.2d 849; *Tarrant Appraisal District*, 707 S.W.2d 281; Attorney General Opinions JM-405; MW-430 and authorities cited therein. If the buildings in question are owned by the city purely for the purpose of leasing them to private commercial interests, the property would not, in our opinion, be tax-exempt. Whether the private use constitutes or supports a public purpose of the city must be determined on the basis of the facts of the case and the terms of any constitutional or statutory provisions authorizing the city's acquisition and use of the property. *See* Attorney General Opinions JM-1049; JM-464.

### C. *Office complex owned by a school district.*

You state that the Amarillo Independent School District (AISD) recently purchased an office complex consisting of six separate buildings -- five office buildings and a restaurant facility. One of the office buildings serves as the administrative office of the district and is the sole structure used or occupied by the district at this time. Portions of the other office structures are leased to private and governmental entities. The remaining office space and the restaurant facility are vacant.

The school district in its brief states that the office complex, known as Security Park, was purchased in its entirety for economic reasons. It asserts that the school board's intention at the time of purchase was to sell all of the complex except

the district's administrative office, and it describes some of the steps it has taken to sell the property. As of the date of its brief, the surplus property had not been sold, and the AISD resorted to leasing some of the property and depositing the rentals in its treasury. The AISD concedes that at the time the property was acquired it did not anticipate using all of the facility itself, but it reserves the option of retaining any of the property that may be required for the district's operations.

The AISD argues that the Security Park complex is exempt from ad valorem taxation because it was acquired in the pursuit of the school district's legitimate functions and is held for the purpose of resale.[6] It directs us to cases which conclude that a political subdivision's ownership of land under such circumstances is a public purpose for purposes of the constitution and section 11.11 of the Tax Code and the land therefore is tax-exempt to the political subdivision. *See State v. City of San Antonio*, 209 S.W.2d 756 (Tex. 1948); *City of Austin v. Sheppard*, 190 S.W.2d 486 (Tex. 1945); *Lubbock Indep. Sch. Dist. v. Owens*, 217 S.W.2d 186 (Tex. Civ. App.--Amarillo 1948, writ ref'd); *State v. City of Houston*, 140 S.W.2d 277 (Tex. Civ. App.--Galveston 1940, writ ref'd); *see also State v. Moak*, 207 S.W.2d 894 (Tex. 1948); *Eason v. David*, 232 S.W.2d 427 (Tex. Civ. App.--Beaumont 1950, writ ref'd n.r.e.). However, with a single exception, each of the cases cited involved the acquisition of land by a taxing unit for purposes of collecting taxes (either through enforcement of a tax lien or purchase at a tax sale) and the holding of such property for resale. Taxing units are expressly authorized to acquire and dispose of property in satisfaction of taxes due on the property. Tax Code §§ 34.01(c), 34.05. None of the tax cases involved the temporary leasing of the property pending the resale. We therefore do not find these cases dispositive of the AISD's tax liability on the Security Park complex.

The single exception among the cited cases is *State v. City of Houston*, 140 S.W.2d 277. There the city purchased a tract of land, a portion of which it intended to develop as a public street. The city intended to sell the surplus property if it

---

[6]The board of trustees of an independent school district is vested with the exclusive power to "manage and govern the public free schools of the district" and may, in the name of the school district, acquire and hold real and personal property. Educ. Code § 23.26(a), (b). The board of trustees of a school district may sell real property of the district if the proceeds of the sale are used for the purchase of "more convenient and more desirable school property," the construction or repair of school buildings, or are deposited in the local maintenance fund of the district. *Id.* § 23.30(a), (c). In addition, the property must no longer be needed for school purposes. Attorney General Opinions JM-1000 (1988); O-1570 (1939).

received a fair offer. Pending the sale of the property, the city rented houses on the unused portion of the tract to private parties. The state and Harris County sought to collect back taxes on the property that were levied after the city acquired the tract. The court of civil appeals concluded that the property was tax-exempt because the record reflected that the city's motive in acquiring the entire tract was to conserve city road funds. The city chose to buy the entire tract because it received a much better bargain than it would have had it purchased only the portion necessary for the road. The renting of the property pending its sale did not, in the view of the court, change the character of the city's interest in the property or the essential public purpose of the city's use of the property. The property therefore remained tax-exempt.

The AISD states that its acquisition of the Security Park complex was motivated by economic interests similar to those of the city in *City of Houston*, 140 S.W.2d 277. It explains that the former owner of the property initially indicated a willingness to sell the AISD only that portion of the complex that the district sought for its administrative offices, but later decided to offer only the entire complex for sale. After considering other alternatives, the board of trustees concluded that purchase of the entire Security Park complex was the most economical alternative.

Once again, we emphasize that we cannot resolve the fact issues that are at the center of your inquiry. However, the facts portrayed by the AISD tend to support a tax exemption for the Security Park complex under section 11.11 of the Tax Code. The court in *City of Houston*, 140 S.W.2d 277, concluded that public acquisition of land in excess of actual need constitutes a public purpose if the acquisition was intended to conserve the fund that made the public work possible. The public purpose is not lost if the political subdivision puts the property to productive use pending its disposal and the proceeds of this use are deposited to the credit of the public fund used to purchase the tract.[7] The private use in these circumstances further conserves the public fund, serving yet an additional public purpose. Accordingly, if it is determined that the Security Park complex was acquired and is used in similar fashion, we believe that property would be tax-exempt to the district.

---

[7]The funds used to purchase the tract were bond funds dedicated to road improvements. It is not clear whether the court would have required deposit of rentals to the credit of the original funding source if the bond funds had not been so dedicated. We are not advised as to the source of the funds used by AISD to purchase the Security Park complex.

### D. *Property and residences owned by a junior college district.*

You also inform us that the Amarillo Junior College District has purchased real property adjoining the campus of Amarillo College for purposes of future expansion. It has leased some of the property to private individuals pending the expansion. The district explains that it acquired 29 parcels of property, many with improvements, pursuant to a long-range expansion plan adopted by its board of regents in 1983. Four residences on the properties are currently leased to students or employees of Amarillo College; eleven others evidently are leased to persons who are not students or employees of the college. Two units of an eight-unit storage garage facility are rented to persons who are not students or employees of the junior college. The remaining 20 structures were razed or moved or are currently used by the district. The district deposits rental income in its building fund.

The district advises that the lease of these properties is temporary, pending implementation of the long-range expansion plan. It advances arguments and authorities similar to the AISD. In particular, it cites *City of Abilene v. State*, 113 S.W.2d 631 (Tex. Civ. App.--Eastland 1937, writ dism'd w.o.j.) which involved the lease of city property acquired for construction of a reservoir. The property involved in the dispute constituted only a portion of the property that was required for the project; the city was unable at the time to acquire all of the property required for the project. Pending the acquisition of the remaining property, the city leased the land acquired to that point. The court concluded that the temporary rental of the property would not remove its tax exemption because the purpose for which the property was originally acquired -- construction of a reservoir -- was a public purpose, a purpose which the city had not abandoned when it leased the property for private use.[8]

The junior college district stipulates facts which, if true, would conform to the uses of public property approved in *City of Abilene*, 113 S.W.2d 631. However, we

---

[8]The *City of Abilene* case was disapproved in *City of Beaumont v. Fertitta*, 415 S.W.2d 902 (Tex. 1967), because the court of civil appeals wrongly assumed that municipal property was within the legislature's authority to tax and that article VIII, section 2 applied to municipal property. The supreme court in *Fertitta* ruled that municipal property was not subject to taxation under the constitution. The supreme court has since retreated from this holding, though it has not expressly overruled *Fertitta*. *See Satterlee*, 576 S.W.2d 773; *Leander Independent School District*, 479 S.W.2d 908. And as noted earlier in this opinion, the legislature has provided for the taxation of municipal property consistent with the constitution.

believe this case governs only the renting of the storage garage units. This use of public property pending its ultimate public use does not destroy its tax-exempt status. The tax status of the residences owned by an institution of higher education and rented for housing purposes is governed by section 11.11 of the Tax Code.

As previously noted section 11.11 of the Tax Code contains a number of qualifications to the general tax exemption provided public property under subsection (a). One such qualification is subsection (e), which provides the following in pertinent part:

> It is provided, however, that property that is held or dedicated for the support, maintenance, or benefit of an institution of higher education as defined in Chapter 61, Texas Education Code, but is not rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state or institution *or is not rented or leased to provide private residential housing to members of the public other than students and employees of the state or institution is not taxable.* . . .

The language of subsection (e) plainly implies that property of an institution of higher education dedicated to the support, maintenance, or benefit of the institution that is leased or rented to employees or students of the institution for private residential housing is tax-exempt. Chapter 61 of the Education Code defines "institution of higher education" to include, *inter alia,* a public junior college. Educ. Code § 61.003(8). A public junior college is any junior college certified by the Coordinating Board of the Texas College and University System. *Id.* § 61.003(2). We are informed that Amarillo Junior College is so certified. It is also apparent from the description of the facts that the parcels of property on which the houses sit are dedicated to the benefit of the junior college. Accordingly, the property of the junior college that is rented or leased to employees and students for residential housing is not taxable. On the other hand, property that is rented or leased to provide private residential housing to individuals who are not employees or students of the junior college is not tax-exempt. The property containing the storage garage units remains tax-exempt since its use conforms to the uses approved in *City of Abilene,* 113 S.W.2d 631.

## S U M M A R Y

Property owned by the City of Amarillo consisting of an airport maintenance hangar that is leased to a private party for operation as such is exempt from ad valorem taxation if the property is used in direct support of the operation of the airport by the city. Buildings that are owned by the city are not tax-exempt if they are owned purely for the purpose of renting them to private commercial interests. An office complex owned by the Amarillo Independent School District and partially leased to private parties and other political subdivisions remains tax-exempt if the facility was acquired in its entirety for the purpose of conserving school district funds. Property acquired by the Amarillo Junior College District for purposes of future expansion and temporarily leased to private persons as storage units is tax-exempt. Property rented to students and employees of the junior college for residential housing also remains tax-exempt, but property rented for these purposes to persons who are not students or employees is subject to taxation.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Steve Aragón
Assistant Attorney General