

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 20, 1996

Ms. Becky R. Espino
Chair, Board of Regents
The Texas State University System
P.O. Box 1452
Fort Stockton, Texas 79735

Opinion No. DM-429

Re: Taxation of real property owned by state university and operated as an amusement park (RQ-872)

Dear Ms. Espino:

You request advice about the taxation of real property owned by Southwest Texas State University ("the university"), an institution of higher education under the management and control of the Board of Regents, Texas State University System.[1] You wish to know whether the property known as "Aquarena Springs" is subject to ad valorem taxes for 1995.

You inform us that Southwest Texas State University bought Aquarena Springs in 1993 to use as conference and workshop space and to benefit aquatic biology and anthropology programs. The property consists of a lake, the headwaters of the San Marcos River, a nine-hole golf course, a theme park, two restaurants, a small hotel, and a conference building. The university's application to the Texas Higher Education Coordinating Board for approval of the purchase explained the proposed use of this property as follows:

> Acquisition of the property will provide needed conference and workshop space, and would ensure preservation of the unique ecosystem at the springs, which is home to a variety of rare and endangered species of plant and animal life. The Edwards Aquifer Research and Data Center and our highly regarded aquatic biology and anthropology programs will benefit from the purchase to provide valuable hands-on experience for our students. Over the next several years, the nature and character of the property will be shifted from an entertainment focus to an educational focus. We anticipate constructing a larger conference center on the property. Interpretive

---

[1]Educ. Code § 96.41.

areas dealing with the environment, ecology and anthropology of the area would be added to more fully develop the area's educational potential.[2]

The property was operated as an amusement park by the university's campus food service provider under a management agreement entered into on December 1993, and terminated on October 1, 1995. You inform us that educational and other university-related functions were held on the property during this time. These included internal conferences, several Board of Regents meetings, and academic and course-related activities. The Texas State University System Board of Regents voted on February 24, 1996, to alter the character of use from an entertainment focus to an educational one.

The management agreement required the food service provider to pay property taxes on the facility.[3] Ad valorem taxes were paid on the property in 1994, but they have not been paid for 1995, although the university has set aside funds in an escrow account to pay them. On behalf of the Board of Regents of the Texas State University System, you ask whether the Aquarena Springs property is subject to ad valorem taxation for 1995 under section 11.11 of the Tax Code.

A decision about the tax liability of the Aquarena Springs property in 1995 requires the resolution of fact questions about its use.[4] Since fact questions cannot be resolved in an attorney general opinion, we cannot fully answer your question, but we can address the legal issues that it raises.

Article VIII, section 1 of the Texas Constitution provides that all real property in the state, "unless exempt as required or permitted by this Constitution," shall be taxed in proportion to its value. Article VIII, section 2(a) of the Texas Constitution provides that

---

[2]Real Property Application of Southwest Texas State University to Texas Higher Education Coordinating Board (Oct. 1, 1993). *See* Educ. Code § 61.0572(a)(5) (Texas Higher Education Coordinating Board shall endorse, or delay until next succeeding session of legislature, proposed purchase of real property by an institution of higher education); *see also* 19 T.A.C. §§ 17.61 - .68 (request for coordinating board endorsement of real property acquisitions). The Aquarena Springs property was purchased with coordinating board approval.

[3]Management Agreement between Professional Food-Service Management, Inc. ("PFM") and the Board of Regents, Texas State University System, acting on behalf of Southwest Texas State University ("SWT") sec. 1.03.d (Dec. 31, 1993).

[4]Attorney General Opinion DM-78 (1992) at 4; *see also* Attorney General Opinion DM-272 (1993) at 11. Affidavits by administrative personnel of the Texas State University System and Southwest Texas State University submitted to us do not resolve the questions of fact.

the "legislature may, by general laws, exempt from taxation public property used for public purposes." Section 11.11 of the Tax Code provides the following tax exemptions for public property used for public purposes:

> (a) Except as provided by Subsections (b) and (c) of this section, property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes.

> (b) [land owned by the Permanent University Fund]. . . .

> (c) [agricultural or grazing land owned by a county for the benefit of public schools under Article VII, section 6, of the Texas Constitution] . . . .

> (d) Property owned by the state that is not used for public purposes is taxable. Property owned by a state agency or institution is not used for public purposes if the property is rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state agency or institution.

Section 11.11(e) of the Tax Code provides a tax exemption for property "held or dedicated for the support, maintenance, or benefit" of an institution of higher education, but it must not be

> rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state or institution or . . . rented or leased to provide private residential housing to members of the public other than students and employees of the state or institution.

Southwest Texas State is an institution of higher education within this provision.[5] Since article VIII, section 2(a) of the Texas Constitution authorizes the legislature to exempt public property only if it is used for public purposes, the property described by section 11.11(e) is exempt from taxation only if it is used for a public purpose.[6]

---

[5] Attorney General Opinion JM-551 (1986) at 7.

[6] Attorney General Opinion DM-272 (1993) at 7.

In a judicial decision on the ad valorem tax liability of a medical office building owned by a hospital authority but leased to private physicians, the court stated as follows:

[t]he legislature is without power to tax any property publicly owned and held only for public purposes and devoted exclusively to the use and benefit of the public. [*Daugherty v. Thompson*, 9 S.W. 99 (Tex. 1888)]. This analysis was recently reaffirmed in *Satterlee v. Gulf Coast Waste Disposal Authority*, 576 S.W.2d 773 (Tex. 1978) (on rehearing). Therefore, the test is whether the property in question is held only for public purposes and is devoted exclusively to the use and benefit of the public. *Satterlee*, 576 S.W.2d at 779.[7]

The lease of publicly-owned property to private individuals for their own commercial purposes generally means that the property is not used for a public purpose and is therefore not entitled to the tax exemption.[8] Thus, the publicly-owned medical building was not exempt from property tax, because of the lease it was subject to:

[i]t is undisputed that the appellant's property was not used exclusively for the use and benefit of the public since private doctors were leasing part of the property for their own commercial enterprises.[9]

*See also* Tax Code § 11.11(d) (property owned by state agency or institution is not used for public purposes if it is rented or leased for compensation to private business enterprise to use for purpose not related to performance of duties and functions of state agency or institution).

The university asserts that the service agreement did not transfer a leasehold interest or any other legal interest in the property and that ownership remained in the university. Although a copy of the service agreement has been submitted to us, we are unable to determine whether it is a lease or a contract for employment of an agent or

---

[7]*Grand Prairie Hosp. Auth. v. Dallas County Appraisal Dist.*, 730 S.W.2d 849, 851 (Tex. App.--Dallas 1987, writ ref'd n.r.e.). *See* Attorney General Opinions DM-188 (1992) at 3, DM-78 (1992) at 3.

[8]Real property held by a political subdivision solely for resale is exempt from ad valorem tax even though it is leased for commercial purposes or otherwise used for private commercial activity. *State v. City of Houston*, 140 S.W.2d 277 (Tex. Civ. App.--Galveston 1940, writ ref'd); Attorney General Opinion DM-188 (1992) at 3.

[9]*Grand Prairie*, 730 S.W.2d at 851; *see* Attorney General Opinions DM-188 (1992) at 3, DM-78 at 3 (1992).

independent contractor.[10] This office does not construe contracts in the opinion process.[11] Whether a particular relation is that of landlord and tenant is generally a question of fact for the jury.[12] Thus, we are unable to determine whether the property was leased to the management company to carry out its own commercial enterprise, with the attendant loss of the tax exemption.[13]

A determination that the property was not leased for private commercial purposes would not establish its tax-exempt status, because the property must also have been used for public purposes in 1995, the year for which tax liability is in question.[14] A letter from the City of San Marcos states that the resort was advertised and operated as a family-oriented theme park during 1995, charging fees for admission to the park and separate fees for the inn, the swimming pool and the golf course. The letter also expresses the belief that the use of the resort for higher education purposes was incidental to use as an amusement park. The city argues that the operation of the resort as a family-oriented theme park did not meet the test of a "public purpose." The university has argued that the property was used for some educational and other university purposes during 1995.

The arguments from both sides suggest that property owned by the university will meet the public purpose test only if it is used for educational purposes. However, a brief submitted in connection with this request argues that property owned by a state university is exempt from taxation "if it is used for a 'public purpose,' not just for a narrowly defined

---

[10]*See* 49 AM. JUR. 2D *Landlord and Tenant* §§ 7-11 (1995) (discussing whether transaction whereby person manages real estate of another is lease or mere employment as agent or employee). *See also* Management Agreement, *supra* note 3, secs. 1.03.j (PFM will enter into contracts and leases regarding facility with understanding that it may not subcontract or sublease operations of any part of facility without SWT's prior written approval), 1.04 (stating that parties are acting as independent contractors and that neither party will be employee of other).

[11]Attorney General Opinions DM-192 (1992) at 10, JM-908 (1988) at 2. The management agreement in this case raises questions of construction that cannot be resolved solely as a matter of law. *See supra* note 9.

[12]*Brown v. Johnson*, 12 S.W.2d 543, 545 (Tex. Comm'n App. 1929, writ ref'd); 49 AM. JUR. 2D, *supra*, § 7.

[13]*See Grand Prairie*, 730 S.W.2d at 851.

[14]When the Texas Department of Corrections sought an exemption from county taxation for a state prison, the court first determined that the state held taxable title to the prison, and then related that the parties agreed that a prison was "property used for public purposes." *Texas Dep't of Corrections v. Anderson County Appraisal Dist.*, 834 S.W.2d 130, 131 (Tex. App.–Tyler 1992, writ denied).

'educational function,' as the taxing authorities contend in their brief."[15] These arguments raise at least two issues: (1) Is the "public purpose" that entitles the real property of a particular state agency or political subdivision to a tax exemption limited to purposes within the agency's or subdivision's constitutional and statutory authority; and (2) If so, how is the authority of a state university to be defined for purposes of establishing the entitlement of its property to exemption from ad valorem tax?

We have found no judicial decision of a court addressing the first issue, but we question whether the courts would approve a tax exemption for public property used by a governmental entity for a purpose that was not within its express or implied constitutional or statutory authorization. The legislature, in granting tax exemptions, has made distinctions along these lines. Thus, university property is not exempt from tax if it is "rented or leased to provide private residential housing to members of the public other than students and employees of the state or institution,"[16] while the property of a housing authority used to provide private residential housing is tax exempt.[17] We also note that the powers of a home-rule city to use its real property are more comprehensive than the powers of a state agency in charge of a specific aspect of government.[18] We acknowledge that this is an unresolved issue, but we believe the courts would find the statutory and constitutional purposes of a governmental entity relevant to the kind of public purpose for which its property may be exempt from tax.

With respect to the second issue, we observe that judicial decisions and attorney general opinions have not defined the function of a university narrowly.[19] State institutions of higher education have authority to undertake a wide variety of activities that are not strictly educational but that support the educational mission of the university.[20] A

---

[15]Letter Brief from The University of Texas System (June 25, 1996).

[16]Tax Code § 11.11(e).

[17]Local Gov't Code § 392.005.

[18]See A&M Consol. Indep. Sch. Dist. v City of Bryan, 184 S.W.2d 914, 916 (Tex. 1945) (rural electrification lines owned by home rule city are public property within exemption for ad valorem tax); Texas Dep't of Corrections v. Anderson County Appraisal Dist., 834 S.W.2d 130, 131 (Tex. App.--Tyler 1992, writ denied) (prison is property used for public purpose).

[19]See Foley v. Benedict, 55 S.W.2d 805 (Tex. 1932) (authority of University of Texas Board of Regents over educational matters); Attorney General Opinion O-4167 (1941) at 7 (authority of University of Texas Board of Regents to manage and govern university includes authority to spend appropriated funds for public relations and fund-raising).

[20]Attorney General Opinion DM-329 (1995) at 7.

judicial decision upheld a statutory requirement that students attending a state university pay a student union fee for the purpose of operating, maintaining and improving the student union, which provided facilities for "various extra-curricular activities of social, recreational, and educational natures; all of which are conducted or supervised under the direction of the Board of Regents."[21]  The court observed:

> That these activities . . . fall appropriately within the functions of a present day university does not, we believe, admit of serious question.[22]

The legislature has also recognized that institutions of higher education engage in "auxiliary enterprises." "[A]uxiliary enterprise buildings and facilities" include, but are not limited to "dormitories, cafeterias, student union buildings, stadiums, and alumni centers, used solely for those purposes."[23]

Nonetheless, as the arguments from both sides suggest, the operation of an amusement facility is a most unusual activity for a state university.  The university does not purport to claim a tax exemption for property operated as an amusement facility to generate revenue.  In view of the educational mission of a university and its traditionally recognized supporting functions, it is highly questionable that land used in such a way could be described as "held only for public purposes and . . . devoted exclusively to the use and benefit of the public."[24]  In the absence of judicial guidance to the contrary, it is

---

[21]*Rainey v. Malone*, 141 S.W.2d 713 (Tex. Civ. App.--Austin 1940, no writ).

[22]*Id.* at 717.

[23]Educ. Code § 61.003(14).  *See* Attorney General Opinions H-1248 (1978), JM-999 (1988); *see also* Gov't Code § 2252.061(1) (defining auxiliary enterprise as "a business activity that is conducted at a state agency [including an institution of higher education], provides a service to the agency, and is not paid for with appropriated money").

[24]*Satterlee v. Gulf Coast Waste Disp. Auth.*, 576 S.W.2d 773, 779 (Tex. 1978).  Property owned by a municipal corporation must lawfully be used for public purposes to be exempt from taxation.  *A&M Consol. Indep. Sch. Dist.*, 179 S.W.2d 987, *aff'd*, 184 S.W.2d 914, 916 (Tex. 1945).

our opinion that university property operated not for purposes related to education but as an amusement park to generate income[25] is not property used for a public purpose.[26]

The courts might, however, find a public purpose for continuing the operation of Aquarena Springs for the short term while phasing in educational activities, by analogy to cases in which real property held by a political subdivision solely for resale qualified for tax exemption even though it was under lease or otherwise used for commercial purposes.[27] Whether this analogy is appropriate in this case depends on all the facts and circumstances surrounding the university's operation of the property during 1995.

Briefs submitted in connection with this request reach different conclusions about the extent to which the property was used for educational or education-related purposes in 1995. A legal opinion issued by the attorney general cannot resolve questions of fact about the use of the property. Facts about the actual use of the property, the disposition of revenues from its operation, and benefits accruing to the university from its operations

---

[25]The fact that public property produces revenues does not prevent it from receiving the tax exemption, if the property is used for a public purpose, so that some portion of the public has a right to use it under proper regulations and the revenue inures to the public benefit of the governmental entity. *State v. Houston Lighting & Power Co.*, 609 S.W.2d 263, 268-69 (Tex. Civ. App.--Corpus Christi 1980, writ ref'd n.r.e.) (citing *Lower Colorado River Auth. v. Chemical B.&T. Co.*, 190 S.W.2d 48 (Tex. 1945)); *Galveston Wharf Co. v. Galveston*, 63 Tex. 14 (1884).

Whether revenue from the operation of Aquarena Springs inured to the public benefit would require an analysis of the fiscal provisions of the Management Agreement and information from the accounts of the facility's operation. *See* Management Agreement, *supra* note 3, secs. 1.03 (listing services to be provided by PFM at expense of facility, including liability insurance covering PFM and SWT), .06 (PFM shall contribute up to $50,000 for long-term plan for facility), .08 (PFM will use its highest professional skills to provide SWT with maximum economic return consistent with principles of proper management); 2.01 - .04 (SWT will pay PFM first-year management fee of $250,000 plus percentage of annual net sales, up to maximum fee of $500,000); 3.01 (SWT will establish working capital account of $500,000 to cover operating cash shortfall, to be reimbursed from net sales).

[26]State institutions of higher education operate athletic and recreational facilities in connection with the statutory and constitutional purposes of these institutions, and our remarks are not intended to raise any question about the public purpose served by such facilities, *see* Attorney General Opinion M-832 (1971) (football stadium), or by recreational facilities provided by governmental entities pursuant to statutory authority, *see* Attorney General Opinion WW-1074 (1961) (lease of county-owned stadium for purpose of conducting professional sporting events, rodeos, festivals, fairs, recreational activities, concerts, conventions and civic events).

[27]*See supra* note 7.

would be relevant to this determination. Facts about the university's purpose in continuing to operate Aquarena Springs are also relevant.[28]

## S U M M A R Y

State-owned property used for public purposes is exempt from taxation. Whether the Aquarena Springs property owned by Southwest Texas State University is subject to ad valorem tax for 1995 involves questions of fact that cannot be resolved in the opinion process.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General

---

[28]The Tax Code establishes procedures for resolving disputes between taxing unit and taxpayer. *See* Tax Code § 41.41 (taxpayer protest before appraisal review board); *id.* ch. 42 (judicial review of order of appraisal review board); *see also id.* § 33.41 (suit by taxing unit to collect delinquent taxes).